**In re R.H. WILLIAMS d/b/a Williams Associates, Debtor.**

**R.H. WILLIAMS, Plaintiff,**

v.

**AMERICAN BANK OF the MID–CITIES, N.A., Defendant.**

**Bankruptcy No. 485–40922.
Adv. No. 485–4287.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

June 10, 1986.

Marguerite Kirk, Fort Worth, Tex., for Debtor, R.H. Williams.

Jan R. Thurman, Snider & Moore, Arlington, Tex., for American Bank of the Mid-Cities, N.A.

## MEMORANDUM OF DECISION

MICHAEL A. McCONNELL, Bankruptcy Judge.

Plaintiff, R.H. WILLIAMS ("the Debtor" or "Williams"), brings this Adversary Proceeding under Section 542 of the Bankrupt-

cy Code seeking a turnover of funds of the Debtor held in certain accounts at AMERI-CAN BANK OF THE MID–CITIES ("the Bank"). Williams further seeks an award of actual and punitive damages against the Bank for an alleged violation of the automatic stay resulting from the Bank's post-petition "administrative freeze" of all funds of the Debtor on deposit with the Bank. The Bank in turn denies the Debtor's right to a turnover of the funds, claiming a right to setoff all funds in the accounts pursuant to Section 542(b) of the Bankruptcy Code against indebtedness of the Debtor to the Bank.

Trial before the Court was held on April 1, 1986, and the purpose of this Memorandum of Decision is to set forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Bankruptcy Rules.[1]

## FACTUAL BACKGROUND

The facts are essentially undisputed. Williams filed a Chapter 11 bankruptcy petition on July 3, 1985, but neglected to inform the Bank of the filing. At the time of filing, the Debtor had two accounts at the Bank in his name totalling approximately $20,682.35 ("the Accounts"). Upon inadvertently receiving notice of the bankruptcy filing on August 6th, the Bank "froze" the Accounts, dishonoring all checks presented for payment after that date. By the time the Bank learned of the filing and imposed the freeze, the Debtor had already spent $3,767.55 of the funds in the Accounts.

When Williams subsequently made demand that the Bank pay over the balance of the Accounts to him, the Bank refused, asserting a right of setoff of all funds in the Accounts against an indebtedness of approximately $21,000.00 of Williams to the Bank. A stalemate has subsequently existed between the parties because the Bank

has not requested relief from the automatic stay under Section 362 of the Bankruptcy Code for the purpose of offsetting funds in the Accounts nor has the Debtor requested use of the funds under Section 363(c) of the Bankruptcy Code.

## CONTENTIONS OF THE PARTIES

Williams contends that he is entitled as a debtor-in-possession to a turnover of all funds in the Accounts under the provisions of Section 542 of the Bankruptcy Code, claiming that the deposit balances constitute "property of the estate" as defined in Section 541. Williams further contends that the Bank is in contempt of court because the Bank's imposition of an "administrative freeze" on the Accounts constituted a violation of Section 362(a)(7) of the Bankruptcy Code. Finally, Williams contends that the Bank wrongfully dishonored numerous checks totalling $6,712.50 after the date of the "freeze". Williams claims that the Bank's wrongful dishonor of the checks damaged his business reputation and business relations with third parties; and, therefore, warrants damages under Section 362(h) of the Bankruptcy Code.

It is the Bank's position that: (1) the Bank was under an affirmative duty to freeze the Accounts in order to avoid potential liability to the bankruptcy estate; (2) the Bank is a secured creditor of Williams and has setoff rights against the Accounts which preclude its alleged obligation to pay funds to the Debtor; (3) the funds in the Accounts are "cash collateral" for repayment of its secured claim in this proceeding; (4) Williams' demands for payment of the dishonored checks and for a turnover of the Accounts' funds were improper; and (5) the Bank had no obligation to initiate legal proceedings with respect to possession of the Accounts.

---

**1.** At the trial, the Court dismissed a counterclaim asserted by the Bank regarding the dischargeability of the Debtor's debts to the Bank on the basis that the counterclaim was premature in the absence of any plan of reorganization in the Chapter 11 providing for a discharge.

The Court later granted a Motion for Reconsideration under Rule 9023 of the Bankruptcy Rules with respect to the dismissal and instead ordered a severance of the counterclaim under Rule 7042(b).

## ISSUES PRESENTED

Three questions are presented for resolution by this Court: (1) whether the Bank has a valid right of setoff under Texas law thus precluding the Debtor's right to a turnover, (2) whether the imposition of an "administrative freeze" by the Bank violated the automatic stay against setoff contained in Section 362(a)(7) of the Bankruptcy Code, and (3), if so, is the Debtor entitled to actual and punitive damages under Section 362(h).

## THE CAUSE OF ACTION FOR TURNOVER

The Debtor seeks a turnover of all funds in the Accounts pursuant to Section 542 of the Bankruptcy Code which provides that any entity (other than a "custodian") holding property of the estate must turnover the property upon proper demand by the debtor-in-possession or trustee. Under Section 542, where property of the estate is a debt "matured, payable on demand, or payable on order," the entity obligated on that debt must, *with one exception*, pay the debt to the order of the debtor in possession. The sole exception is contained in Section 542(b) which provides that a creditor may refuse to turnover the property if the creditor possesses a valid right of offset under Section 553.[2] COLLIER–LENDING INSTITUTIONS AND THE BANKRUPTCY CODE ¶ 3.04[3][e][iii] (1986); 4 COLLIER ON BANKRUPTCY ¶ 542.03 at 542–14.

The Debtor has the initial burden of proving that the property in issue is property of the estate under Section 541. Once established, the burden shifts to the creditor to prove a right of offset. In this case, it is unquestioned that the funds in the Accounts fall within the broad scope of the definition of "property of the estate" contained in Section 541. The burden is therefore on the Bank to establish a valid right of offset under Section 553 in order to defeat the Debtor's cause of action for turnover.

## THE BANK'S RIGHT OF SETOFF

The right of setoff is given special protection under the Bankruptcy Code in Section 553.[3] Although the right of setoff is at odds with the fundamental bankruptcy principle of equality of distribution among creditors because it permits a creditor to obtain full satisfaction of a debt by extinguishing an equal amount of the creditor's obligation to the debtor, setoff has long been permitted in bankruptcy courts. *New York County National Bank v. Massey*, 192 U.S. 138, 146, 24 S.Ct. 199, 201, 48 L.Ed. 380 (1904); *In Re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986); *In Re Braniff Airways, Inc.*, 42 B.R. 443, 448 (Bankr. N.D.Tex.1984).

In the absence of a recognition of the right to a setoff, a creditor might be forced pay in full the amount owed to the debtor, but be limited to no more than a *pro rata* recovery of its claim against the debtor.

2. Subsection (b) of section 542 provides:
 "(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*" (emphasis added)

3. The protections given to the right of setoff, however, are not unlimited. "Certain exceptions to the right of setoff are contained in the Code, such as the prohibition of setoffs of creditors' claims which are disallowed under Section 502. A right of setoff will be denied if the creditor received the claim by means of an assignment by another entity after the bank-ruptcy petition is filed or within ninety days before bankruptcy while the debtor was insolvent. Deliberate manipulation by a creditor to obtain setoff rights on the eve of bankruptcy is also prevented by prohibiting setoffs to the extent that the debt owed to the debtor was incurred within ninety days prior to bankruptcy, while the debtor was insolvent, for the purpose of obtaining a right of setoff. Moreover, a pre-petition setoff exercised within ninety days prior to the commencement of the case may be recovered by the trustee to the extent that the creditor's position had been improved during that period." Weintraub & Resnick, *"Freezing the Debtor's Account: A Banker's Dilemma Under the Bankruptcy Code"*, 100 BANKING LAW JOURNAL 316, 317 (1983).

The process of imposing this loss on an otherwise innocent party has historically been thought to be improper. 2 NORTON BANKR.L. & PRAC. § 33.01.

 The creditor's right of setoff has been codified in Section 553(a) of the Bankruptcy Code which provides in pertinent part:

"Except as otherwise provided in this Section and in Sections 362 and 363 of this Title, this Title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the Debtor that arose before the commencement of the case ..."

Although Section 553 preserves the right of setoff, the nature, existence and enforceability of claims sought to be setoff are determined by applying the law of the state where the operative facts occurred, *In Re Chestnut Co.*, 39 B.R. 519, 521 (Bankr.D.S. C.1984), and it is undisputed in the case at bar that all operative facts occurred in the state of Texas and that Texas law applies.

Under Texas law, the relation between a bank and a depositor ordinarily is that of "debtor and creditor"; and, as a consequence, a bank has a right to setoff the amount of a deposit against an equal amount of indebtedness which a depositor owes a bank. *Sears v. Continental Bank and Trust Company*, 562 S.W.2d 843, 844 (Tex.1977); *First National Bank of Schulenburg v. Winkler*, 161 S.W.2d 1053, 1056, 139 Tex. 131, 137 (1942). It is a fundamental principle of banking law that in the case of a general deposit of money in a bank, the moment the money is deposited it actually becomes the property of the bank, and the bank and the depositor assume the relation of "debtor and creditor". The ef-

fect of the transaction is that of a loan to the bank upon the promise and obligation to pay or repay the amount deposited upon demand. 10 AM.JUR.2d BANKS § 339.

 On the date of the filing of the petition in this case, Williams was indebted to the Bank in the approximate sum of $21,000.00 pursuant to a promissory note executed on April 25, 1985. The note was a "demand" note, but, if no demand was made, the note was payable on maturity. In this case, the note was fully mature by its terms on October 22, 1985. The Bank, therefore, has a present valid right of offset under Texas law against all funds in the Accounts.[4]

The Bank's right of setoff under Section 553 is also elevated to the status of an allowed "secured" claim under Section 506(a) of the Bankruptcy Code.[5] Subsection (a) of Section 506 provides, in pertinent part:

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest, *or that is subject to setoff under Section 553 of this title is a secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff ..." (emphasis added)

 Furthermore, funds in the Accounts are "cash collateral" for payment of the allowed secured (offset) claim of the Bank pursuant to Subsection (a) of Section 363 of the Bankruptcy Code, which provides:

"In this section, 'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents whenever acquired in which the estate and any entity

---

**4.** To the extent the proper measuring date for the Bank's right of setoff was the date of the filing of the petition, it is clear that the Bank also had a valid right on the petition date, even though the note had not "matured" by its terms. Under Texas law, it is clear that a bank may offset an unmatured debt if the customer is "insolvent". *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 371 (5th Cir.1980). In the case at bar, the Debtor judicially admitted his insolvency on the date of the petition in the Schedules and

Statement of Affairs filed in his Chapter 11 proceeding.

**5.** Like any secured claim, an entity with a right to setoff is assured that the automatic stay will be lifted to permit the creditor to setoff unless the Debtor furnishes "adequate protection" for the use of the creditor's cash collateral. *In Re Braniff Airways, Inc.*, 42 B.R. 443, 448 (Bankr.N. D.Tex.1984); *In Re R.C.I. Enterprises, Inc.*, 22 B.R. 549, 551 (Bankr.S.D.Fla.1982).

other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property subject to a security interest as provided in Section 552(b) of this Title, whether existing before or after the commencement of a case under this Title."

The Debtor's use of this cash collateral is *absolutely prohibited* by the terms of Section 363 unless the creditor affirmatively consents to use of the cash collateral; or the Court, after notice and a hearing, authorizes such use in accordance with Section 363(c). *In Re Archer,* 34 B.R. 28, 30 (Bankr.N.D.Tex.1983).

Because of this Court's determination that the Bank has a valid right of offset, William's cause of action for a turnover must be denied in its entirety. Furthermore, through the interplay of Sections 506, 363 and 553 of the Bankruptcy Code, it is clear that all funds in the Accounts were "cash collateral" for the allowed secured (offset) claim of the Bank in this case and that Williams was absolutely prohibited from using any of the funds in the Accounts after the date of filing of the petition without the affirmative consent of the Bank or order of this Court.

■ Although Williams was prohibited from using any funds in the Accounts, the Bank was likewise prohibited from offsetting funds in the Accounts by the express terms of § 362(a)(7) of the Bankruptcy Code which imposes an automatic stay against "the setoff of any debt owing to the Debtor that arose before the commencement of the case under this Title against any claim against the Debtor." In other words, the Code curiously recognizes the right of the Bank to withhold payment in view of the Bank's valid offset rights while prohibiting the exercise of such offset rights in § 362(a)(7). Notwithstanding this Court's resolution of the Debtor's Complaint for Turnover against the Debtor, Williams additionally contends that the

imposition of an "administrative freeze" violated the express terms of Section 362(a)(7) entitling the Debtor to actual and punitive damages under Section 362(h).

## THE ADMINISTRATIVE FREEZE

In this case, the Bank exercised "self-help" by placing an "administrative freeze" on the Accounts of the Debtor at the Bank after obtaining knowledge that Williams had filed a bankruptcy petition. The parties stipulated that the Bank first had knowledge of the filing of the petition on August 6, 1985, although the petition had been on file since July 3, 1985. The Bank then immediately froze the Accounts with funds totalling approximately $16,914.80 and dishonored approximately $6,712.50 in checks. The Bank contends that an "administrative freeze" was necessary to prevent further dissipation of its "cash collateral" and was further mandated by the express terms of Section 542(c) of the Bankruptcy Code regarding payment by a bank of checks drawn pre-petition.

The question of whether a bank may impose an "administrative freeze" on a debtor's bank account pending a determination of the bank's substantive right to setoff has sparked an intense debate in the courts and among the commentators. In general, those cases which have concluded that an administrative freeze is proper have based their holding upon the necessity to give banks needed protection against immediate dissipation of the bank's cash collateral and the resulting destruction of the bank's right of setoff before it has an opportunity to be heard in bankruptcy court. Those decisions which have found an administrative freeze to be in violation of the automatic stay have based their holding upon the prohibitions against post-petition offsets contained in Section 362(a)(7) and the necessity to prevent any interruption of the debtor's business in Chapter 11 reorganizations.[6]

6. Compare those cases validating an administrative freeze, *In Re Edgins,* 36 B.R. 480 (B.A.P. 9th Cir.1984); *Stan v. Mid-American Credit Union,* 39 B.R. 246 (D.Kan.1984); *Kenney's Franchise*

*Corp. v. Central Fidelity Bank,* 22 B.R. 747 (W.D. Va.1982) *rev'g* 12 B.R. 390 (Bankr.W.D.Va.1981); *In Re Hoffman,* 51 B.R. 42 (Bankr.W.D.Ark. 1985); *In Re Owens-Peterson,* 39 B.R. 186

After reviewing the relevant case law, this Court finds and concludes that the imposition of an automatic freeze by American Bank of the Mid-Cities was proper under the facts of this case because (1) the express statutory language of Section 542(b) authorizes an "administration freeze" where a creditor has a valid right of offset (2) the Debtor failed to segregate the Bank's cash collateral as required by the Bankruptcy Code, (3) the Bank had a valid right of offset under Texas law, and (4) the Bank acted in good faith.

■ As previously noted by this Court, there is an apparent conflict between the provisions of Section 542(b) which permit a creditor to retain funds subject to setoff and the provisions of Section 362(a)(7) which prohibit post-petition offsets. In the opinion of this Court, however, these provisions can be harmonized by applying long-standing statutory rules of construction. "Where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision." 73 AM. JUR.2d, STATUTES, § 257. *See also, Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381, 389 (1980); *In Re Rojas,* 10 B.R. 353, 355 (Bankr.App. Panel 9th Cir.1981). In this case, the specific permission granted to a creditor in Section 542(b) to retain funds subject to

setoff should prevail over the general restriction in Section 362(a)(7) against post-petition offsets. Similarly, the language of Section 542(b) should prevail over the general prohibition in Section 362(a)(3) which forbids acts to exercise "exclusive control" over property of the estate.

Section 542(b) states unequivocally that a creditor may refuse to turn over funds in a debtor's account if the creditor has a valid right of offset. Because Section 542(b) provides that a creditor who has a right of offset does not have to turnover the funds, it unmistakably follows that the person can continue to hold the funds (*i.e.* an "administrative freeze" or "hold") until an order is entered by a bankruptcy court providing for disposition of the funds in question. It is certainly reasonable to conclude that had Congress wanted an entity with an asserted right of offset to immediately initiate some legal action to preserve its position such as by filing an Adversary Proceeding Under Rule 7001 seeking injunctive relief or filing an emergency motion for relief from the automatic stay, Congress certainly could have placed language in the Bankruptcy Code to that effect.

In this connection, this Court agrees with the holding of the Bankruptcy Appellate Panel for the Ninth Circuit in the case of *In Re Edgins,* 36 B.R. 480 (Bankr.App.Panel 1984) where Judge Volinn held that a freeze of the debtor's accounts pending a determination of the bank's right of offset was a proper and responsible action, necessary to create a balance pending prompt action, presumably by the debtor, or ulti-

(Bankr.N.D.Ga.1984); *In Re Gazelle, Inc.,* 17 B.R. 617 (Bankr.W.D.Wisc.1982); *In Re Carpenter,* 14 B.R. 405 (Bankr.M.D.Tenn.1981); with those cases finding an administrative freeze violates the automatic stay, *United Franchise Corp. v. Central Fidelity Bank,* 22 B.R. 747 (D.W.D.Va. 1982) *ref'g* 12 B.R. 390 (Bankr.W.D.Va.1981); *In Re Owens-Peterson,* 39 B.R. 186 (Bankr.N.D.Ga. 1984); *In Re Gazelle, Inc.,* 17 B.R. 617 (Bankr. W.D.Wisc.1982); *In Re Carpenter,* 14 B.R. 405 (Bankr.M.D.Tenn.1981); with those cases finding an administrative freeze violates the automatic stay, *United States v. Reynolds,* 764 F.2d 1004 (4th Cir.1985) (IRS tax refund offset); *United States v. Norton,* 717 F.2d 767, 772–773 (3rd Cir.1983) (IRS tax refund offset); *In Re*

*Wildcat Construction Co., Inc.,* 57 B.R. 981 (Bankr.D.Vt.1986); *In Re Rio,* 55 B.R. 814 (Bankr.M.D.Ala.1985); *In Re L.H.G. Resources, Inc.,* 34 B.R. 202 (Bankr.W.D.Tex.1983); *In Re Executive Associates, Inc.,* 24 B.R. 171 (Bankr.S. D.Tex.1982); *In Re Cusanino,* 17 B.R. 879 (Bankr.E.D.Pa.1982); *see also,* Paul Groschadl, *"Freezing the Debtor's Bank Account: A Violation of the Automatic Stay?",* 57 AM.BANKR.L. JOURNAL 75 (1983); Weintraub and Resnick, *"Freezing the Debtor's Account: A Banker's Dilemma Under the Bankruptcy Code"* 100 BANKING LAW JOURNAL 316 (1983); Hall, *"Preferences and Setoffs: Sections 547 and 553",* 2 BANKR.DEV.J. 49 (1985).

mately by the bank to resolve the rights of the parties to the funds.

As Judge Mixon held in *In Re Hoffman*, 51 B.R. 42, 46 (Bankr.W.D.Ark.1985):

"The substantive effect of an administrative freeze which occurs post-petition is to preserve, not alter, the *status quo* and, therefore, is neither a direct nor indirect attempt to improve the bank's right to distribution of estate assets which exist at the time the petition is filed."

In summary, Section 542(b) permits a creditor to hold funds subject to a right of setoff in spite of a demand for a turnover. In other words, all provisions of the Bankruptcy Code can be given full effect by construing Section 542(b) as an exception to the general rule in Section 362(a)(7) against post-petition offsets. Section 362(a)(7) simply prohibits the creditor from taking the second step in the three-step process of offset under Texas law.

■ As noted by Judge Bill Brister in *In Re Archer*, 34 B.R. 28, 30 (Bankr.N.D.Tex. 1983) there are three steps that must be taken to maintain a setoff. "There must first have been a decision to exercise the right to setoff, a subsequent action which completes the setoff, and finally a record which verifies that the action has been taken. *Baker v. National City Bank of Cleveland*, 511 F.2d 1016 (6th Cir.1975). A mere declaration of an intent to setoff retrospectively does not establish a setoff." [7]

■ Alternatively, even if Section 542(b) and Section 362(a)(7) were irreconcilable, the Debtor's own default in failing to segregate the Bank's "cash collateral" and in spending the cash collateral without creditor or court permission validates the "administrative freeze" imposed by the Bank in this case. However, to fully understand the seriousness of the Debtor's offense, some explanation of the policy behind the provisions relating to the use of "cash collateral" are in order.

According to the statutory scheme of the Bankruptcy Code, the filing of a bankruptcy petition marks the beginning of a new life for an entity known as the "debtor-in-possession"—an entity *separate* and *distinct* from the Debtor itself. *In Re B & L Oil Co.*, 782 F.2d 155, 158 (10th Cir.1986); *In Re Braniff Airways, Inc.*, 42 B.R. 443, 448–49 (Bankr.N.D.Tex.1984); *Hill v. Farmers Home Administration*, 19 B.R. 375, 380 (Bankr.N.D.Tex.1982). Furthermore, according to Section 541, of the Bankruptcy Code, the commencement of a case creates an "estate" comprised of all property listed in Section 541, including funds in the debtor's accounts on the date of filing. 4 COLLIER ON BANKRUPTCY ¶ 541.11.

Although unencumbered funds in the debtor's accounts are property of the estate and could be held for the purpose of paying pre-petition debts through a plan of reorganization, a debtor-in-possession is permitted to use unencumbered funds in its accounts to pay post-petition operating expenses incurred "in the ordinary course of business" during the period of reorganization without seeking the permission of the bankruptcy court. 11 U.S.C. § 363. However, any cash in the debtor's accounts on the date of filing constituting "cash collat-

---

7. Moreover, even in the absence of a right of offset, a bank can be under an obligation to freeze funds in the debtor's accounts under certain circumstances when the debtor does not close its accounts on the date of filing the petition. In a case decided under the former Bankruptcy Act, the United States Supreme Court held in *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) that a bank should not be held liable for payment of checks drawn before the filing of a bankruptcy petition but paid after the filing of the petition where the bank had no knowledge of the filing of the bankruptcy proceeding. Section 542(c) of the Bankruptcy Code was drafted to codify the hold-

ing of the United States Supreme Court in *Bank of Marin v. England*. Section 542(c) now protects a bank that transfers property of the estate to third persons where the transfer is made without notice of the bankruptcy filing and made in good faith. By implication, however, if the bank transfers property of the estate after it receives notice of the filing of the petition, it may do so only at its own peril. *In Re Hoffman*, 51 B.R. at 46. Accordingly, a bank is now under an obligation to refuse payment of checks that are presented to the bank after the date of the filing of the petition where the check was drawn before the date of filing.

eral" as defined in § 363(a) of the Bankruptcy Code may not be used without the affirmative consent of the creditor or order of the Bankruptcy Court, after notice and a hearing. Moreover, Section 363(c)(4) places the debtor-in-possession under an express legislative duty to *segregate* and *account for* any cash collateral in its possession.[8]

The difference in treatment afforded to unencumbered pre-petition cash and that afforded to "cash collateral" arises not from any inherent limitation of bankruptcy law but from the risk that a debtor may quickly dissipate a creditor's cash collateral in a bankruptcy reorganization. *"Standards and Sanctions for the Use of Cash Collateral Under the Bankruptcy Code",* 63 TEX.LAW REV. 341 (1984). The drafters of the Bankruptcy Code recognized that, due to the unique nature of cash collateral, specific protections should apply to prevent its dissipation. Otherwise, the Court and any entity with an interest therein could be left with a *fait accompli,* 2 COLLIER ON BANKRUPTCY ¶ 363.04 at 363–23. As Judge Alexander Paskay noted in *In Re Mickler,* 9 B.R. 121, 123 (Bankr.M. D.Fla.1981):

> "Congress in enacting § 363 of the Code gave a special treatment to "cash collateral" for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on "cash collateral" is not deprived of its collateral through unprotected use by the debtor."

Moreover, because the secured creditors interest is often dependent on "identification" of his cash collateral, *see* U.C.C. § 9–306 (1978), debtor misuse through commingling and inadequate accounting can cutoff the secured creditors interest by making identification impossible as a practical matter. 63 TEX.LAW.REV., *supra,* at 360 n. 121.

Once cash collateral has been dissipated and spent, court-fashioned sanctions such as retroactive adequate protection, appointment of a Chapter 11 trustee or prohibitions against the further use of cash collateral can be hollow victories for a secured creditor and do not rise to the level of a "remedy". This is especially true where all remaining property of the estate is encumbered and the cash which has been spent without permission cannot be replaced.

In the case at bar, the record is clear that all funds in the Accounts on the date of bankruptcy were cash collateral for repayment of the Bank's allowed secured (offset) claim. The Debtor was under an obligation to immediately close the Accounts and to segregate the cash collateral pending a determination by this Court of either the Debtor's right to use the cash collateral upon a showing of adequate protection or a motion by the Bank to lift the automatic stay to offset the funds in the Accounts.

The Debtor, however, failed to fulfill his statutory duties under the Bankruptcy Code, and, as a result, $3,767.55 of the funds in the Accounts were spent before the Bank even obtained knowledge of the filing of the bankruptcy. Under these circumstances, the Debtor is liable for sanctions for the unauthorized use of this cash collateral.[9] Because the Debtor failed to carry out his duty to segregate the cash collateral, the Bank properly placed an administrative freeze on the Accounts upon obtaining knowledge of the filing of the

---

**8.** In the Northern District of Texas, the United States Trustee requires all debtors to close all existing accounts on the date of bankruptcy and to open "debtor-in-possession" accounts at designated banking institutions in order to properly carry out the legislative mandate of the Code. In this case, in a telephone-conference debtor interview conducted on July 11, 1985 by the Office of the U.S. Trustee, Williams was instructed to close all existing accounts and later signed a statement on July 22, 1985 acknowledging his obligation to close all existing bank accounts.

**9.** In *In Re Aerosmith Denton Corp.,* 36 B.R. 116, 119 (Bankr.N.D.Tex.1983), Judge Bill Brister placed all counsel in the Northern District of Texas on notice that violations of cash collateral restrictions in this district would be dealt with by appropriate criminal or civil sanctions:

> "Thus, on the [present] record, I am hesitant to impose either additional civil or criminal sanctions on the debtor or on counsel, particularly where, as here, the law in the past has been unsettled. However, the law should now be settled in this Court—proper sanctions can be imposed against those responsible for

petition. Under the facts of this case, it would be manifestly unjust to require the Bank to stand by while Williams continues to dissipate the Bank's cash collateral.

If all debtors in this district carried out their statutory duty to immediately segregate and account for all cash collateral, there would be no necessity for the imposition of an administrative freeze by creditors. Cash collateral would be preserved until the determination of a turnover demand by the debtor under Section 542 or a motion by the creditor to offset under Section 362. The facts of this case illustrate that, sadly, this is not the case. As stated by Paul Groschadl in his article, *"Freezing the Debtor's Bank Account"*, *supra*, at 77:

> "If this were Camelot, these provisions of the Bankruptcy Code [Sections 363(a) and (c)(2)] would, by themselves, impose the "freeze". Bankers would not put administrative holds on debtors' bank accounts and debtors would not attempt to withdraw funds from the account without the bank's permission or a court order obtained upon a showing of adequate protection. If this were Camelot, the cases that follow [*Kenney's Franchise*, etc.] would not have been decided."

This Court finds the reasoning of Judge Volinn in *In Re Edgins*, 36 B.R. at 484, compelling when he comments:

> "The *Cusanno* [*v. Fidelity Bank*, 29 B.R. 810 (E.D.Pa.1983)] line of cases are not persuasive. They put the burden on the wrong party. Creditors with a valid right of setoff under 11 U.S.C. Section 553 would be required to turnover to the debtor funds subject to setoff and thereafter attempt to obtain an order from the court to preclude the debtor from improvidently dissipating the funds. *This will, all too often, be an attempt to lock the barn door after the horse has been stolen.* The shield of 11 U.S.C. Section 362, which is procedural and vests no intrinsic interest in property to the estate, should not be used as a sword to divest other parties of legitimate interests in property. particularly where the debtor has the knowledge and means to bring whatever claim he may have for use of the funds on for prompt hearing." (emphasis added)

Finally, it should be noted that this Court specifically finds that the Bank acted in good faith in imposing the administrative freeze. The Bank was certainly at its peril in imposing the administrative freeze, and, if this Court had found no valid right of offset under Texas law, the Bank would be subject to actual and punitive damages for violation of the automatic stay and a turnover order of this Court. The force of the automatic stay, so central to the effectiveness of the Bankruptcy Code, can be maintained by imposing liability on a bank where it places an administrative freeze on a debtor's accounts without justification.

Judgment shall be entered in accordance with this Memorandum of Decision.

---

use of cash collateral after a Title 11 case has been filed when there has been no compliance with Section 363(c)(2)."