In re AIR ATLANTA, INC., Debtor.

**NATIONAL BANK OF GEORGIA, INC., Movant,**

v.

**AIR ATLANTA, INC., Respondent.**

**Bankruptcy No. A87–02530–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 2, 1987.

Richard G. Murphy, Thomas M. Byrne, Sutherland, Asbill & Brennan, Atlanta, Ga., for Nat. Bank of Georgia, Inc.

John C. Pennington, Norton, Pennington, Goetz, Cronkright & Prior, Atlanta, Ga., for Air Atlanta, Inc.

### ORDER

W.H. DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on a motion to lift stay to permit setoff filed by National Bank of Georgia, Inc. ("NBG"). At the hearing on the matter on May 27, 1987, NBG presented documents and testimony showing that the total amount on deposit in seven (7) of the debtor's accounts maintained at NBG was $276,298.16 as of the date the debtor filed its Chapter 11 peti-

tion. The evidence also indicated that the principal balance owed NBG on one loan made to the debtor is $333,333.33.

The debtor argues that NBG is not entitled to set off the mutual debts of the parties because NBG violated the automatic stay by freezing the debtor's deposit accounts on the date the bankruptcy petition was filed and by "unlinking" the debtor's accounts and reversing the credit for checks drawn on the accounts, which checks had initially been posted.

The Court has previously addressed the administrative freeze of the debtor's accounts by NBG in the Order entered on the debtor's complaint demanding a turnover of the funds on deposit and asking that the bank be held in contempt for violation of the stay. The Court ruled that NBG's administrative freeze did not violate the stay. 74 B.R. 354.

■ This decision was mandated primarily by this Court's reasoning in *In re Owens-Peterson,* 39 B.R. 186 (Bankr.N.D. Ga.1984). The rationale of the *Owens-Peterson* holding that a freeze of bank accounts is not a violation of the automatic stay can be summarized as follows. First, a freeze is not a post-petition setoff prohibited by 11 U.S.C. § 362(a)(7) because there is no debit to the debtor's account and no application of the funds on deposit to the bank's claim. Second, 11 U.S.C. § 542(b) provides that any entity that owes a debt to the debtor shall pay such debt except to the extent that it is subject to setoff against a claim against the debtor. Third, a debtor's deposit account which is subject to setoff constitutes cash collateral under 11 U.S.C. § 363(a), which cannot, pursuant to § 363(c)(2), be used by the debtor without the bank's consent or the Court's approval. *See also* 4 *Collier on Bankruptcy* ¶ 553.-15[6] (15th ed. 1987) (agreeing at p. 553–72 that the "freeze should not be considered a violation of the stay.")

The only statutory change which has occurred since the *Owens-Peterson* decision that could have an effect on the holding is an amendment to 11 U.S.C. § 362(a)(3) which added the language prohibiting any act "to exercise control" over property of the estate.

■ This Court agrees with the holding in *In re Williams,* 61 B.R. 567 (Bankr.N.D. Tex.1986), that the more specific provision of § 542(b), allowing a creditor to retain funds subject to setoff, should control over the more general restrictions of § 362(a)(7) (prohibiting setoffs) and § 362(a)(3) (prohibiting acts "to exercise control"). Furthermore, the *Williams* decision was supported on the policy that the burden should be on the debtor to obtain permission to use cash collateral, and that the bank should not have to turn over funds to the debtor and thereafter request the Court to prohibit the debtor from dissipating the funds. *Williams,* 61 B.R. at 576 (quoting *In re Edgins,* 36 B.R. 480 (Bankr.App.Panel 9th Cir.1984)). Finally, the *Collier* treatise has also concluded that the "exercise control" language of § 362(a)(3) should not change the conclusion that an administrative freeze will not violate the automatic stay, since the debtor should still be unable to use the funds absent consent or court authorization under § 363(c)(2). 2 *Collier on Bankruptcy* § 362.04[7] at 362–41 n. 30a (15th ed. 1987).

■ Finding no violation of the stay as a result of the administrative freeze, the Court must address the debtor's contention that NBG took steps that went beyond a mere freeze by "unlinking" the debtor's sub-accounts from its master account and by reversing credits given on checks drawn on the accounts. The testimony at the hearing indicated that unlinking the accounts was simply a step to make it administratively easier to allow the bank to ensure that checks drawn on the account were returned to their point of origin without clearing the bank. Also, it appears that "reversing" the checks is just another step in the freeze, since all checks are given "provisional credit" when they are presented to the bank, and the bank has until midnight of the next banking day after receipt of the checks, pursuant to O.C.G.A. §§ 11–4–302, 11–4–213(1)(d), to reverse the provisional credit. This is merely the procedure for dishonoring the checks

after they are presented, which is the meaning of "freezing" the accounts, and is therefore not a violation of the automatic stay.

The debtor has offered no other arguments against NBG's motion to lift stay to permit setoff and has made no offer of adequate protection of NBG's rights. NBG has shown a valid right of setoff and there is not present in this case any of the enumerated circumstances of 11 U.S.C. § 553(a) which would limit such right.

Accordingly, it is ORDERED that NBG's motion for relief from stay to permit setoff of the $276,298.16 balance in the debtor's account is GRANTED.