In re FIRST CONNECTICUT SMALL
BUSINESS INVESTMENT
COMPANY, Debtor.

FIRST CONNECTICUT SMALL
BUSINESS INVESTMENT
COMPANY, Plaintiff,

v.

BANK OF BOSTON
CONNECTICUT, Defendant.

BANK OF BOSTON
CONNECTICUT, Plaintiff,

v.

FIRST CONNECTICUT SMALL
BUSINESS INVESTMENT
COMPANY, Defendant.

Bankruptcy No. 90–51531.
Adv. Nos. 90–5338, 90–5339.

United States Bankruptcy Court,
D. Connecticut.

Aug. 31, 1990.

Stephen P. Wright, David Pite, DiPietro, Kantrovitz & Brownstein, P.C., New Haven, Conn., for debtor.

Alan Robert Baker, Michael J. Sage, Hebb & Gitlin, P.C., Hartford, Conn., for Bank of Boston Connecticut.

## MEMORANDUM AND ORDER ON APPLICATIONS FOR PRELIMINARY INJUNCTIONS

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

On February 15, 1990, the debtor gave the Bank of Boston Connecticut ("BBC") a revolving credit note in which it promised to pay amounts loaned up to $4,000,000.00 plus interest. The note provides that the debtor "hereby grants to [BBC a] lien and right of set-off for all of [the debtor's] liabilities hereunder, upon and against all of the [debtor's] deposits, credits and other property now or hereafter in the possession or control of [BBC] or in transit to it." On August 15, 1990, the date the debtor filed a petition under chapter 11 of the Bankruptcy Code, the debtor owed BBC in excess of $1,500,000.00 under the note. As of the petition date the debtor had deposits of $261,263.37 in two accounts with BBC. Subsequent to the petition, BBC placed an administrative freeze on those deposits, and several checks written on the accounts were thereafter returned unpaid due to insufficient funds.

On August 20, BBC commenced adversary proceeding No. 90–5339, seeking a declaratory judgment that the deposits are subject to its lien and constitute cash collateral and a preliminary and/or permanent injunction under Rule 65 Fed.R.Civ.P. restraining the debtor from withdrawing money from the accounts. On that same date BBC filed the instant application for a preliminary injunction, which seeks the same injunctive relief. In support of its application, BBC argues that the placement of an administrative freeze on the accounts for the sole purpose of preserving the status quo until this court makes a determination as to the rights of the parties in the deposits did not violate the automatic stay; that it has a right to setoff the deposits so that its claim is secured by those deposits under Code § 506(a); and that the deposits constitute cash collateral under § 363(a) which the debtor may not use without BBC's consent or court approval. *See* 11 U.S.C. § 363(c). BBC argues that without injunctive relief it will be irreparably harmed because if the funds are released from the administrative freeze before it has an opportunity to prove that it has a security interest and that the deposits constitute cash collateral, it will lose its right of setoff.

On August 21, the debtor commenced adversary proceeding No. 90–5338, seeking a judgment for damages against BBC for its alleged violation of the automatic stay, *see* 11 U.S.C. § 362(h), and filed the instant application for a preliminary injunction under Rule 65 enjoining BBC from continuing to freeze the deposits. The debtor contends that BBC does not have the right to setoff the deposits against its claim, so that it is not a secured creditor under § 506(a); that the freeze violated the automatic stay; and that the loss of the use of the deposits will cause it irreparable harm.[1]

On August 28, BBC filed a motion for relief from the automatic stay to allow it to offset the deposits.

### II.

In the Second Circuit, "[a] preliminary injunction should be granted where the moving party demonstrates (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor." *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir.1986).

### A.

■ The critical inquiry in the debtor's application for a preliminary injunction is whether BBC violated the automatic stay by placing an administrative freeze on the accounts. Section 362(a) provides:

[A] petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of—

....

(3) any act ... to exercise control over property of the estate....

It is apparent that the administrative freeze was an act to exercise control over property of the debtor's estate. *See Small Business Admin. v. Rinehart*, 887 F.2d 165, 168 (8th Cir.1989). BBC argues, however, that it may offset the accounts and that § 542(b) provides an exception to the automatic stay. Section 542(b) provides in relevant part:

[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

To buttress the argument that Congress intended to create in § 542(b) such an exception, BBC advances the so-called "banker's dilemma" argument, *i.e.* bankers who do not withhold payment of checks drawn on a debtor's account by an administrative freeze risk liability under § 542(c) and the loss of any right they have to a setoff under § 553. BBC also contends that if the administrative freeze is of short duration, the automatic stay is not violated. I disagree.

The issue of whether a bank may impose an administrative freeze on a debtor's bank account has been the subject of conflicting decisions and commentary. Courts which have held that such a freeze does not violate the stay have based their decisions on the conclusion that § 542(b) is the more specific provision and therefore governs over § 362(a). *E.g., National Bank of Ga., Inc. v. Air Atlanta, Inc. (In re Air Atlanta, Inc.)*, 74 B.R. 426, 427 (Bankr.N.D.Ga.1987), *aff'd*, 81 B.R. 724 (N.D.Ga. 1987); *Williams v. American Bank of Mid–Cities, N.A. (In re Williams)*, 61 B.R. 567, 573 (Bankr.N.D.Tex.1986). Courts have also found that such a freeze is proper due to the necessity to give banks the

---

1. The debtor also argues that, assuming arguendo that BBC had the right to freeze the deposits, its action constituted a setoff in violation of the automatic stay. *See* 11 U.S.C. § 362(a)(7). That argument is easily dismissed. In *Baker v. National City Bank of Cleveland*, 511 F.2d 1016, 1018 (6th Cir.1975), the court adopted a widely accepted test for determining whether a setoff

has occurred: (1) the decision to exercise the right of setoff is made; (2) some action which accomplishes the setoff is taken; and (3) a record is entered which evidences that the right of setoff has been exercised. It is undisputed that BBC did not debit the debtor's accounts, so there was no setoff.

ability to protect against the dissipation of their cash collateral, *see* 11 U.S.C. § 363(a), with the resulting destruction of their right of setoff before having an opportunity to have their rights determined, *e.g., In re Learn*, 95 B.R. 495, 496 (Bankr. N.D.Ohio 1989); *Rio v. Army Aviation Center Fed. Credit Union*, 82 B.R. 138, 144 (M.D.Ala.1986), and that it is the debtor's obligation to initiate a proceeding to determine rights in funds after a bank has placed a freeze on an account. *E.g., In re Air Atlanta, supra*, 74 B.R. at 427; *Bank of Am. Nat'l Trust and Sav. Ass'n v. Edgins (In re Edgins,)*, 36 B.R. 480, 483–84 (9th Cir. BAP 1984).

■ In sharp contrast, other courts have found that an administrative freeze does violate the automatic stay. *See, e.g., Rinehart, supra*, 887 F.2d at 168; *Homan v. Kemba Cincinnati Credit Union (In re Homan)*, 116 B.R. 595, 602–05, 20 B.C.D. 1118, 1122–23 (Bankr.S.D.Ohio 1990); *In re Wildcat Constr. Co. Inc.*, 57 B.R. 981, 984–86 (Bankr.D.Vt.1986); *Cusanno v. Fidelity Bank*, 29 B.R. 810, 812 (E.D.Pa.1983); *In re Encarnacion*, 1988 WL 131934 (Bankr. E.D.Pa.1988). I find that the latter cases are persuasive.[2] The automatic stay is a crucial provision of the Code which should be construed broadly, while exceptions to it are to be interpreted narrowly. *See Lincoln Sav. Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.)*, 880 F.2d 1540, 1545–47 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). In keeping with that general principle, I find that where Congress intended to establish a statutory exception to the stay, it specifically did so in § 362(b). For example, § 546(b) provides that if state law permits perfection of a security interest to be effective against an entity that acquires rights in property before the date of such perfection and re-

quires the seizure of the property or the commencement of an action to accomplish such perfection, and the property has not been seized and an action not commenced prior to the filing of a petition, "such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement." Thus, although arguably § 546(b) could be read to create an exception to § 362(a)(4), Congress specifically provided in § 362(b)(3) that such an act of perfection is not prevented by the stay, which leads to the conclusion Congress that absent § 363(b)(3), § 546(b) would not create an exception to the stay. *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir.1985) ("Without a clear congressional command otherwise, we will not construe a statute in any way that makes some of its provisions surplusage."). I conclude that a similar analysis is applicable in the context of § 542(b).

■ Further, while it is true that specific statutory provisions govern general provisions, *e.g. Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980), that rule of construction only has relevance when two statutory provisions are in conflict. *See, e.g., Chemical Mfr. Ass'n v. EPA*, 673 F.2d 507, 512 (D.C.Cir.1982); *Stewart v. Smith*, 673 F.2d 485, 492 (D.C.Cir.1982). Whenever possible, statutory provisions should be construed so as to be consistent with each other. *Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 870 (D.C.Cir.1979). Section 542(b) merely states that a creditor with a right of setoff need not turn over funds automatically or upon a demand by a trustee. It does not authorize a creditor which believes it has a right to setoff to take unilateral affirmative action to prevent the debtor from using those funds, and does not conflict with § 363(a)(3).

**2.** BBC distinguishes several of the cases cited *supra* on various grounds. For example, it and several courts argue that cases such as *Rinehart,* involving a non-bank creditor, are not persuasive here because a non-bank does not face potential liability under § 542(c), and that non-chapter 11 cases such as *Homan* are distinguishable because deposits do not constitute cash collateral under § 363. I reject these and the

other distinctions made by BBC. The stay is not an amorphous device with parameters to be shaped in each case depending on the type of debtor and the potential problems faced by creditors. Rather, it is initially an absolute prohibition with respect to which the Code provides quick relief, if appropriate, under § 362(d) and even emergency relief without a hearing to prevent irreparable harm. *See* 11 U.S.C. § 362(f).

■ Thus, any such self help violates the automatic stay. Accordingly, a creditor concerned that a debtor will use its cash collateral in violation of § 363(c)(2) must seek emergency relief under § 362(f) or injunctive relief under § 105(a) or Rule 65 if it believes that it will be irreparably harmed before a hearing can be scheduled on a motion for relief from stay. It appears that BBC agrees with this approach, as its instant application is aimed at that relief.

In response to BBC's "banker's dilemma" argument, it is noted that the automatic stay is a codification of a public policy to create debtor protection upon the commencement of a case, in contrast to the old Bankruptcy Act under which the stay was not automatic. The claim that the stay is not violated so long as the control over the debtor's account is temporary is not only directly contradicted by the plain language of § 362(a), but also is unsupported by the alleged emergency justification for the administrative freeze. I am not convinced that the time it takes to use the Congressionally sanctioned procedures will jeopardize a bank's position.

Requiring a creditor to follow such a procedure is not merely a matter of form over substance. It prevents a creditor from making the unilateral determination that funds are in fact subject to setoff. As the court in *Homan, supra,* 116 B.R. at 602, 20 B.C.D. at 1122, stated:

> The application of an administrative freeze represents a creditor's independent determination that the creditor's claim is a valid lien which creates an interest in the account of the debtor ... superior to any other entity. The credit union's actions represent exactly the type of activity that the Code, particularly the automatic stay, seeks to prohibit.
> ....
> ... The bank by placing an administrative freeze on the debtor's account, without obtaining a court order, impermissibly encroaches upon the authority assigned by Congress to the Bankruptcy Court.

*See also In re Wildcat Constr. Co. Inc., supra,* 57 B.R. at 986 ("[P]erhaps the most fundamental problem with countenancing the freezing of the debtor's bank accounts before any judicial determination of the rights of the parties has been made is that it begs the critical question, assuming in advance the precondition for its validity.... The freeze is essentially an extra-judicial temporary restraining order."). Further, requiring a creditor to seek injunctive relief gives effect to the Code objective of automatically protecting debtors from acts prohibited by the stay. *See Morgan Guaranty Trust Co. of N.Y. v. American Sav. and Loan Ass'n,* 804 F.2d 1487, 1491 (9th Cir.1986) (the stay forbids act which "require the debtor to act affirmatively to protect its interests."), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).

■ The administrative freeze violated the automatic stay and is therefore void. *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 431 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). Thus, there is no need for the injunction which the debtor seeks.

### B.

■ The critical inquiry in BBC's application is whether it has a right under state law to setoff the deposits. Code § 553(a) provides in relevant part:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

Although § 553(b) recognizes and preserves BBC's right of setoff under state law, *In re McLean Indus., Inc.,* 90 B.R. 614, 618 (Bankr.S.D.N.Y.1988), that right is subject to automatic stay subsection 362(a)(7).

The general rule in Connecticut is that "a creditor-bank has a right of set-off against funds in its possession belonging to a debt-

or-depositor." *Vic Gerard Golf Cars, Inc. v. Citizens Nat'l Bank of Fairfield,* 528 F.Supp. 237, 241 (D.Conn.1981). *See also Bank of Boston Conn. v. Century Brass Prod., Inc. (Matter of Century Brass Prod., Inc.),* 97 B.R. 152, 155 (Bankr.D. Conn.1989). The debtor argues that an exception to this rule enunciated in *Hartford Nat'l Bank & Trust Co. v. Riverside Trust Co.,* 117 Conn. 276, 280–81, 167 A. 811 (Conn.1933), *i.e.* that a solvent bank may not setoff a deposit against an unmatured debt where the debtor is solvent, is applicable in this case. However, the note here is a demand note, and it is well settled in Connecticut that a demand note is due and payable immediately upon its delivery. *E.g., Thomaston Sav. Bank v. Warner,* 144 Conn. 97, 101, 127 A.2d 495 (Conn. 1956); *Savings Bank of New Britain v. Weed,* 121 Conn. 414, 419–20, 185 A. 571 (Conn.1936); *Curtis v. Smith,* 75 Conn. 429, 431, 53 A. 902 (Conn.1903). Moreover, even assuming the debt was not mature prior to the petition, the filing of a petition accelerates the principal amounts due on all claims against the debtor. *Hoffman v. Portland Bank (In re Hoffman),* 51 B.R. 42, 46 (Bankr.W.D.Ark.1985); *Tonyan Constr. Co., Inc. v. McHenry State Bank (In re Tonyan Constr. Co., Inc.),* 28 B.R. 714, 727 (Bankr.N.D.Ill.1983). *See also In re Manville Forest Prod. Corp.,* 43 B.R. 293, 297 (Bankr.S.D.N.Y.1984). Thus, the exception relied upon by the debtor is not applicable, and BBC has a right of setoff.

Code § 506(a) provides in part:

An allowed claim of a creditor ... that is subject to setoff under section 553 of this title, is a secured claim ... to the extent of the amount subject to setoff. . . .

Thus, because BBC has a right of setoff, it has a security interest in the deposits. Code § 363(a) provides that

"cash collateral" means ... deposit accounts ... in which the estate and an entity other than the estate have an interest. . . .

Because BBC has a security interest in the deposits, they constitute cash collateral which the debtor may not use absent BBC's consent or court approval. *See* 11 U.S.C. § 363(c)(3).

 If the debtor uses the deposits before BBC is able to have its motion for relief from stay heard, BBC would be irreparably harmed by the loss of its collateral. Moreover, given the findings recited here, BBC will probably succeed on the merits in adversary proceeding 90–5339.

### III.

For the foregoing reasons, the debtor's application for a preliminary injunction is DENIED; BBC's application for a preliminary injunction is GRANTED, and the debtor is prohibited from using or transferring the deposits until further order of this court on BBC's motion for relief from the automatic stay.[3]

---

**3.** Both parties also applied for temporary restraining orders, but as both received notice and an opportunity to be heard and because the duration of the injunction entered in favor of BBC is uncertain, the applications are treated as solely for preliminary injunctions. *See Morning Telegraph v. Powers,* 450 F.2d 97, 99 (2d Cir. 1971).