In re LOUGH, Jeff P. and Lough, Vera, a/k/a Vera Pierce, Debtors.

Bankruptcy No. 93–03337–13.

United States Bankruptcy Court, D. Idaho.

Jan. 7, 1994.

C. Grant King, Boise, ID, for debtors.

Ron Kerl, Service, Gasser & Kerl, Pocatello, ID, for Idaho Cent. Credit Union.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

The debtors filed their chapter 13 petition in this Court on November 24, 1993. On December 2, 1993, the debtors filed a motion entitled "Motion for Contempt and Sanctions; Return of Property of the Estate; and No-

tice of Hearing." This motion alleges that on December 1, 1993, the Idaho Central Credit Union ("ICCU") placed a "freeze" upon funds in the debtors' share account and, as a result thereof, funds in the amount of $868.02 were "frozen" in violation of the automatic stay imposed by 11 U.S.C. § 362.

ICCU contends it did not violate the automatic stay by freezing the debtors' funds. ICCU argues it had an agreement with the debtors for an overdraft protection loan, pursuant to which it granted the debtors credit in the amount of $868.02. Under the provisions of Idaho Code § 45–808, ICCU therefore contends it has a lien on all of the debtors' funds on deposit. ICCU further argues it has a right to setoff the $868.02 in the debtors' account and apply it to ICCU's claim against the debtors.

ICCU additionally responded by filing a motion for relief from the automatic stay to allow it to perform the setoff.

This case is controlled by the holding of the Bankruptcy Appellate Panel for the Ninth Circuit in *Bank of America v. Edgins (In re Edgins)*, 36 B.R. 480 (9th Cir.B.A.P. 1984). In the *Edgins* case, a bank had frozen the account of a debtor after the debtor filed a chapter 13 petition. The debtor moved to hold the bank in contempt, arguing the administrative freeze was a violation of the automatic stay. The BAP held the administrative freeze did not violate the automatic stay.

Section 362, however, as the BAP recognized in *Edgins*, does indeed appear to apply to this situation. *See* 11 U.S.C. § 362(a)(3) (prohibiting actions to obtain possession or exercise control over property of the estate); 11 U.S.C. § 362(a)(4) (prohibiting actions to create, perfect, or enforce a lien against property of the estate); 11 U.S.C. § 362(a)(7) (prohibiting setoffs). Thus, the interplay of other sections of the Bankruptcy Code must also be examined. *Edgins*, 36 B.R. at 482.

■ Just as ICCU owed the debtors the money deposited in the debtors' account, so too the debtors owed ICCU for credit granted under an overdraft protection agreement. ICCU accordingly has a right to setoff. *See Meyer v. Idaho First Nat'l Bank*, 96 Idaho

208, 525 P.2d 990, 991–92 (Idaho 1974) (when bank applies amounts on deposit to outstanding obligation, the bank has acted under the equitable right to setoff rather than I.C. § 45–808). The Bankruptcy Code gives express statutory sanction to the state law right of setoff. 11 U.S.C. § 553.[1] In addition to the banker's lien of I.C. § 45–808,[2] the Bankruptcy Code treats a right of setoff as a secured claim. 11 U.S.C. § 506(a).[3] Because the amount the debtors held on deposit with ICCU is cash collateral for ICCU's security interest (the right to setoff), the debtor is forbidden from using such cash collateral without either the permission of ICCU or the authorization of the Court. 11 U.S.C. § 363(c)(2);[4] *Nat'l Bank of Georgia, Inc. v. Air Atlanta, Inc. (In re Air Atlanta, Inc.)*, 74 B.R. 426, 427 (Bankr.N.D.Ga.), *aff'd*, 81 B.R. 724 (N.D.Ga.1987); *Williams v. Am. Bank of the Mid–Cities, N.A. (In re Williams)*, 61 B.R. 567, 571–72 (Bankr.N.D.Tex.1986); *Edgins*, 36 B.R. at 483.

Moreover, section 542 provides that an entity owing an obligation to a debtor is not required to turn over to the estate property that may be subject to setoff under section 553. 11 U.S.C. § 542(b);[5] *Edgins*, 36 B.R. at 482–83.

■ The nature of the account as cash collateral renders the automatic stay inapplicable. ICCU did not violate the automatic stay, because the debtor had no right to use the cash collateral without court permission. ICCU's action in freezing the account did not violate section 362(a)(3); the freeze was not an attempt to obtain possession of property of the estate, because ICCU already had possession of the property. *Edgins*, 36 B.R. at 484. The freeze was not an attempt to exercise control over property of the estate because there was no right in the property with which the freeze interfered; the debtors had no right to withdraw money from the account without court permission. *See Air Atlanta, supra*, 74 B.R. at 427 (noting conclusion of *Collier on Bankruptcy*). Nor did the freeze violate section 362(a)(4), as an attempt to create, perfect, or enforce a lien; under the Bankruptcy Code's implementation of state law, the right to setoff became a created and perfected security interest on the filing the bankruptcy petition. *See* 11 U.S.C. §§ 506(a), 542(b). The general provisions of section 362 must give way to the more specific statutory provisions of the Bankruptcy Code. *Williams*, 61 B.R. at 573.

■ Lastly, the freeze was not a setoff in violation of section 362(a)(7). ICCU has not applied the funds in the account against the obligation owing to it. *Air Atlanta*, 74 B.R. at 427; *Williams*, 61 B.R. at 574. *See also Edgins*, 36 B.R. at 483 (freeze merely de-

1. Section 553 provides in part:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a).

2. Section 45–808 provides:

A banker has a general lien, dependent on possession, upon all property in his hands, belonging to a customer, for the balance due to him from such customer in the course of the business.

I.C. § 45–808.

3. Section 506(a) provides in its pertinent part:

An allowed claim of a creditor ... that is subject to setoff under section 553 of this title, is a secured claim ... to the extent of the amount subject to setoff

. . . .

11 U.S.C. § 506(a).

4. Section 363 provides in part:

(c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

5. Section 542 provides in part:

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt *may be* offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b) (emphasis added).

ferred payment). ICCU merely prevented the account's dissipation pending a determination of its right to setoff, as it was permitted to do under 11 U.S.C. § 542(b). Alternatively, ICCU denied to the debtors its consent to use the cash collateral—a power expressly given ICCU under section 363(c)(2)(A). Or, to put it another way, ICCU merely acted to prevent the debtors from wrongfully depleting the account in violation of section 363, an injury that might well be impossible to remedy. *See Williams,* 61 B.R. at 575 (noting potential lack of any remedy for dissipation of cash collateral).

Moreover, even if ICCU's actions technically violated the automatic stay, the debtors would have no remedy. Section 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). The debtors did not have the right to access money in the account without Court permission, and so could not be injured by the freeze. If the debtors tried to remove money from the account, it was in an attempt to violate section 363, and ICCU's actions were justified; if the debtors did not try to remove money from the account, the presence of the freeze in no way harmed, hindered, or injured the debtors' rights. Under the present facts, and in the absence of injury, sanctions under section 362(h) are inappropriate.

ICCU has moved for relief from the automatic stay so that it may setoff the amounts in the debtors' account against the debt owed by the debtors to ICCU. As already discussed, ICCU has a right to such a setoff, and the validity of its claim has not been questioned. Relief from the automatic stay is therefore appropriate under 11 U.S.C. § 362(d).

A separate order will be entered.