**In re TWENTY–FOUR HOUR NAUTILUS SWIM AND FITNESS CENTER, INC., a Colorado corporation, Debtor.**

**EQUITABLE BANK OF LITTLETON, N.A., Applicant–Appellee,**

v.

**Christine J. JOBIN, Trustee for Twenty–Four Hour Nautilus Swim and Fitness Center, Inc.**

Civ. A. No. 86–C–436.

United States District Court, D. Colorado.

Dec. 30, 1987.

Wendy W. Davis, Donnell Davis & Lerman, Denver, Colo., for Equitable Bank of Littleton.

Christine J. Jobin, Denver, Colo., trustee.

## ORDER

CARRIGAN, District Judge.

This is an appeal from the bankruptcy court's order granting appellee Equitable Bank of Littleton, N.A. ("Equitable") relief from the automatic stay provision of the Bankruptcy Code. Appellant Christine J. Tobin, as trustee for the debtor, requests that I vacate the bankruptcy court's order. The briefs and the appellate record have been fully considered and oral argument would not materially assist my decision. Jurisdiction is based on 28 U.S.C. § 158(a).

The undisputed facts are as follows. The debtor operated health clubs in several states. Unfortunately, the health goals of the debtor's members did not coincide with the financial health of the debtor, and on May 22, 1985, it filed a petition in bankruptcy seeking protection under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 *et seq.*

Prior to filing for bankruptcy the debtor permitted its members to pay their membership fees with credit cards. The debtor had bank accounts with the appellee bank, and had entered into an agreement under which the bank agreed to credit provisionally to the debtor's accounts the amount of each VISA credit card draft received by the debtor. The provisional credits were to become final only upon final settlement between the appellee and VISA. Final settlement occurred after a 120 day period during which credit-card users could dispute charges on their monthly statements.

More specifically, the debtor and the appellee agreed to be bound by an agreement entitled "Rocky Mountain Bank Card System Merchant Member Agreement." (*See* Exhibit A to appellee's brief.) In paragraph eight of that agreement, the debtor agreed that the appellee bank had the right to charge back any Visa draft if the credit card holder disputed "any aspect of the sale, quality, or delivery of merchandise, or the performance or quality of services covered by any such sales draft...." Additionally, the debtor agreed (1) under paragraph six of the agreement to indemnify Visa and the bank for any loss relating to any sales draft, and (2) under paragraph three of the agreement to abide by the provisions of the Member Operating Guide issued by Visa which contained Visa's rules and regulations.[1]

After the debtor filed its petition in bankruptcy, but before expiration of the 120 day dispute-period on several credit card drafts, VISA notified the appellee bank of disputed charges that totalled approximately $10,000. This amount had already been credited provisionally to the debtor's accounts with the appellee. The bank filed a motion for relief from the automatic stay provisions of the Bankruptcy Code to enable it to "charge back" the disputed amounts to the debtor's account.

The bankruptcy judge granted the bank's motion over the trustee's objection. The bank had argued that it should be allowed to charge back the amount it had credited to the debtor's account because it was entitled to a "setoff" under 11 U.S.C. § 553. The bankruptcy court, however, determined that § 553 did not control. Rather, that court held that the bank was entitled to charge back the amounts credited because of the provisions of the Uniform Commercial Code governing deposits. *See*

1. Regulation 2.11.4 of the Visa Operating Regulations provides in relevant part:

 "The following circumstances shall give rise to a Charge–Back right which may be exercised up to a maximum of 120 calendar days from the Endorsement Date:

 2.11.4.1 Cardholder Disputes Paper—

 —Issuer receives a written complaint from its Cardholder who acknowledges participation in the Transaction, but states that, for a given reason, the Cardholder requested an adjustment and Credit voucher and the Merchant was refused.

 —Issuer receives a written complaint from its Cardholder who acknowledges participation in the transaction and states that the transaction was in violation of law, or the goods or other thing of value described on the Paper were not received by such Cardholder or by a person authorized by him."

Colo.Rev.Stat. §§ 4-4-201, 4-4-212, 4-4-213.

In opposing the motion for relief from stay, the trustee had argued that charging back was improper because the appellee bank was the debtor's collecting agent with respect to payment of the VISA drafts. The bankruptcy court disagreed, reasoning that once a dispute arose over the credit card charge, the bank was no longer a collecting agent for the debtor. The court stated:

"The dispute exists between the consumer and the bank's customer, not with the bank. The agency aspect is terminated. The credit here is only provisional, and is subject to charge-back if the item is not collected. In the case of a Visa account, final credit is established after the 120-day period expires. In the meantime, if a dispute is asserted, the provisional credit is established and any agency relationship between the bank and its customer is terminated." *(Order,* at 3.)

The bankruptcy court concluded that "[w]hen a dispute is asserted, the bank should have the immediate right to charge this back to its customer...." *Id.* The court added that "[t]he provisional credit granted to the debtor does appear to be an equitable interest protected as property of the estate under § 541 for which relief from stay is appropriate if a charge-back is to be allowed." *Id.*

Appellant trustee here contends that the bankruptcy court erred because: (1) the setoff provision of § 553 does control this case; and (2) even if § 553 does not apply, allowing the bank to charge back the disputed amounts will result in preferential treatment to the credit card users who disputed the charges.

Although the debtor has filed a petition in bankruptcy, it is still bound by the provisions of Colorado law not preempted by the Bankruptcy Code. Colorado Revised Statutes § 4-4-212 provides:

"Right of charge-back or refund. (1) If a collecting bank had made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank, *or*

*otherwise* to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, *charge-back* the amount of any credit given for the item to its customer's account, or obtain refund from its customer whether or not it is able to return the items if, by its midnight deadline *or within a longer reasonable time after it learns the facts,* it returns the item or sends notification of the facts. *These rights* to revoke, charge back, and obtain refund *terminate if and when a settlement* for the item received by the bank is or *becomes final....*" (Emphasis added.)

Official Comment 1 to that section states the reasoning behind the provision:

"Under current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid.... In due course the provisional settlements become final simply with the lapse of time. However, in those cases where the item being collected is not finally paid or where for various reasons the bank making the provisional settlement does not itself receive final payment, ... under various types of agreements between banks and between customers and banks, provision is made for the reversal of the provisional settlements, charge-back of provisional credits, and the right to obtain refund."

Under Colo.Rev.Stat. § 4-4-213, an item is finally paid by a bank when the bank: (1) pays cash for the item; (2) settles for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule, or agreement; (3) has completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or (4) has made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule, or agreement.

■ I agree with the appellee bank that here the agreement between the debtor,

the appellee and VISA defined the time and manner in which a provisional settlement of the Visa items would become final. The agreement created the right to revoke the settlement upon dispute by a consumer and for other reasons. The official comment to § 4–4–213 provides that "[i]f under a statute, clearing house rule or agreement, a right of revocation of the settlement exists, the settlement is provisional."

 It is provided by 11 U.S.C. § 541(a) that a debtor's estate consists of all legal or equitable interests of the debtor in property at the time the case is commenced. Thus a trustee succeeds only to the rights possessed by the debtor at the filing of the petition in bankruptcy, and is subject to such claims and defenses as might have been asserted against the debtor but for the filing. *See Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 662 (4th Cir.1985) (trustee acquires rights possessed by bankrupt corporation); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.1984) (whatever rights debtor has in property at commencement of case continue in bankruptcy, "no more, no less"; § 541 is not intended to expand the debtor's rights against others beyond those existent at the commencement of the case); *In re Brown,* 734 F.2d 119, 124 (2d Cir.1984) (bankruptcy estate can have no greater interest in property than the interest held by the debtor when the petition was filed).

Here the debtor did not have a property interest in the amounts only provisionally credited to its accounts. Rather, the debtor's interest in the amounts credited to its accounts at the appellee bank would become unconditional only after the 120–day dispute period ended and settlement on the VISA drafts became final. Because the debtor had no right to

amounts provisionally credited until settlement became final, the bankruptcy estate is not entitled to the disputed amounts.[2]

Accordingly, IT IS ORDERED that the decision of the bankruptcy court is AFFIRMED.

---

**2.** I disagree with the bankruptcy court's conclusion that the bankruptcy estate included an equitable interest in the amounts provisionally credited to the debtor's accounts. Nevertheless, I conclude that the bankruptcy court reached the proper result.

The bankruptcy court correctly determined that the 11 U.S.C. § 553 setoff provision does not apply to this case. As acknowledged by the trustee, setoffs in bankruptcy are allowed to the extent that they are based upon mutual *obligations* existing between debtors and creditors. (*See* appellant's brief, at 4.) Here, the bank owes no obligation to the debtor with regard to the provisionally credited funds in dispute, and therefore setoff does not apply.

Similarly, the amounts charged back cannot be considered as "preferences" to the credit card holders because the funds charged back were never property of the bankruptcy estate.