In re IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc., and Bar Harbor Airways, Inc., d/b/a Eastern Express, Debtors.

Martin R. SHUGRUE, Jr. as Trustee of The Estate of Eastern Air Lines, Inc., Plaintiff,

v.

CHEMICAL BANK, INC., Defendant.

Bankruptcy Nos. 89 B 10448 (BRL), 89 B 10449 (BRL) and 91 B 10289 (BRL). Adv. No. 92–1092A.

United States Bankruptcy Court, S.D. New York.

Jan. 26, 1995.

---

Hill & Barlow, P.C. (Bruce E. Falby, Joshua M. Davis, of counsel), Boston, MA, for Special Counsel to Trustee.

Hahn & Hessen (Gabriel Schwartz, David M. Posner, of counsel), Janet Nadile, New York City, for Chemical Bank.

## MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

### INTRODUCTION

Martin R. Shugrue, Jr. (the "Trustee"), as Trustee of the estate of Eastern Air Lines, Inc. ("Eastern") moves this Court for partial

summary judgment ordering the turnover of approximately $1.8 million held by Chemical Bank, Inc. ("Chemical"). Chemical contends that it either has already exercised setoff rights with respect to these funds or should now be allowed to exercise such rights. As will be discussed, this case provides another reminder that the ability to exercise setoff rights is impacted by the bankruptcy process.

## BACKGROUND

On May 1, 1987, Chemical and Eastern entered into a Merchant Agreement (the "Agreement") which provided that Chemical, in exchange for various fees, would process all Visa and MasterCard charges accepted by Eastern as payment for airline tickets. Under the Agreement, Chemical credited Eastern's commercial checking account at Chemical with payment for such tickets. Chemical, in turn, collected the funds from the banks that issued the credit cards (the "issuing" or "cardholder" banks), which in turn billed the charges to cardholders on the cardholders' monthly credit card statements. In some cases, after Chemical had credited Eastern's account and received payment from the issuing bank, a credit card customer would dispute a charge on his monthly statement. The issuing bank was entitled, under certain circumstances and by presentation to Chemical of appropriate documentation, to "chargeback" the item to Chemical (the "processing" or "merchant" bank) and recover from Chemical the amount of the disputed charge.

Under the Agreement, Chemical, in turn, was entitled to "chargeback" and recover the amount of the item from Eastern upon the presentation of appropriate documentation demonstrating the validity of the chargeback. Eastern could dispute any chargeback by returning supporting documentation to Chemical, whereupon an invalid chargeback would be reversed.

A rider to the Agreement required Eastern to maintain a $2.2 million deposit (the "Deposit") with Chemical as "collateral security" to secure Eastern's obligations under the Agreement. The Agreement could be terminated by either party on 60 days notice to the other party. Following termination, the Agreement allowed Chemical to retain the Deposit for nine months and to deduct chargebacks from the Deposit in accordance with the terms of the Agreement.

The Agreement required Chemical to provide Eastern with documentation sufficient to demonstrate the validity of every chargeback that it sought to charge to Eastern.

On August 29, 1988, Chemical notified Eastern of its intention to terminate the Agreement effective October 28, 1988. Prior to sending its termination notice, Chemical had sold its credit card processing business to National Data Corporation ("NDC"). NDC chose not to assume the Agreement between Chemical and Eastern. Nevertheless, as part of the transaction through which NDC acquired Chemical's merchant business, NDC agreed for a fee to process Eastern chargebacks that would arise from any ticket sales through October 28, 1988. NDC took over Chemical's processing business in October 1988. Thereafter, NDC processed, in the manner described above, all Eastern chargebacks relating to ticket sales through the October 28, 1988 termination of the Agreement.

Although the processing of Eastern chargebacks was transferred to NDC, responsibility for Eastern's bank accounts remained at Chemical. The transfer to NDC did not affect Eastern's dealings with Chemical. Eastern chargeback documents generated by NDC were sent to Chemical for forwarding to Eastern. Similarly, Chemical forwarded to NDC chargeback documents sent back by Eastern. Thus, NDC joined the chain as an additional party in the handling and custodianship of the chargeback documents.

From October 28, 1988 until March 9, 1989, Chemical deducted chargebacks totalling $888,197.48 from the $2.2 million Deposit. On March 9, 1989, Eastern filed its Chapter 11 bankruptcy petition in the Southern District of New York. Chemical filed a proof of claim announcing the following:

As of the filing date, Eastern had incurred valid Chargebacks in the amount of $888,197.48, which sum was applied against the [Deposit], thereby reducing the amount on

deposit in the [Deposit] on the filing date to $1,311,802.52. Since the Filing Date, valid chargebacks have continued to accrue and aggregate the additional sum of $1,558,094.24 to August 14, 1989. In addition, as of the Filing Date, Chemical held, and continues to hold, a demand deposit account maintained by Eastern with Claimant in the amount of [$104,603.56], as to which Claimant asserts setoff rights and a possessory lien securing Eastern's obligations to Claimant under and in connection with the Merchant Agreement (the "Demand Deposit Account").

Accordingly, the Claim is a secured claim to the extent of the sum of the funds maintained in the [Deposit] and in the Demand Deposit Account and is an unsecured claim to the extent that the amount of the Claim exceeds the sum of the funds maintained in the [Deposit] and in the Demand Deposit Account.

Thus, the proof of claim declared Chemical's decision to regard itself as a secured creditor and to retain the Deposit and Demand Deposit Account (the Deposit and Demand Deposit Account are collectively referred to as the "Retained Funds") to secure its claim, but Chemical did not seek this Court's permission to do so. Since filing its proof of claim, Chemical has taken no further steps in this bankruptcy proceeding. It neither sought permission to hold the Retained Funds nor permission to setoff.

Through 1989, Chemical "accrued" a total of $1,610,593.14 against the Deposit according to its summary of charges. After 1989, Chemical accrued a small amount of additional chargebacks. In total, Chemical accrued $1,669,677.04 in post-petition chargebacks which it asserts the right to setoff against estate money. Because the Deposit has accrued interest since March 9, 1989, there is an excess of over $100,000 after subtracting $1,669,677.04 from the Deposit.

For more than two years after filing its proof of claim in August, 1989, Chemical did nothing with respect to Eastern's bankruptcy, despite the fact that virtually all (over 96%) of the chargebacks it now seeks to setoff occurred by the end of 1989. In December 1991, Chemical contacted Eastern to negotiate a "consensual stipulation permitting ... offset" of post-petition chargebacks. Chemical represented that it had retained all of the documentation necessary to prove the validity of the chargebacks. By letter of December 19, 1991, Chemical wrote to Eastern's then-counsel, Weil Gotschal & Manges, and declared it would make available to Eastern back-up documentation demonstrating the validity of the chargebacks it had accrued against the Retained Funds. The letter stated that "should you need to examine the back-up data to verify the chargeback amount, we will be happy to make it available to you." In May of 1992, at a meeting at Chemical's offices on Long Island, Chemical presented Eastern with eight boxes of chargeback back-up materials to demonstrate the validity of all of the post-petition chargebacks.

Following the commencement of this action, Eastern employees twice visited Chemical's offices to examine Chemical's chargeback documentation. Chemical again produced the eight boxes of documents.

The inspection by Eastern revealed that Chemical does not have back-up documentation to prove the validity of most of the accrued chargebacks. The eight boxes of chargeback documents relate to only $496,961.20 of the $1,669,677.04 in claimed post-petition chargebacks. This number reflects the total dollar amount of chargebacks for which Chemical has at least some supporting documentation. Chemical has no back-up documentation to prove the validity of the remaining $1.173 million of post-petition chargebacks that it seeks to setoff against the Retained Funds.[1]

1. Nor has Chemical been able to obtain copies of post-petition chargeback back-up documentation from any other sources, including NDC. Eastern's Diana Larranaga testified that Eastern retained back-up materials relating to post-petition chargebacks in a building now closed through at least early 1992 when she left Eastern; however, Eastern claims to have conducted an exhaustive search and has not located the materials. NDC also apparently claims to have no back-up documentation to contribute.

On these facts, Eastern asserts three alternative grounds for relief. First, it asserts that Chemical cannot prove the legitimacy of $1.173 million in chargebacks which it seeks to exercise. Second, it contends that Chemical violated the automatic stay by unilaterally freezing Eastern's monies and exercising setoff rights without the bankruptcy court's approval and therefore should be denied the equitable right of setoff entirely. Finally, Eastern claims that Chemical materially breached the Agreement which entitles it to setoff and therefore may not obtain the benefits of the Agreement. Chemical's principal response is that its right to setoff is established and governed by the Agreement and the Bankruptcy Code does not alter or effect that right in any way.

### DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure, made applicable herein through Bankruptcy Rule 7056, provides that summary judgment is appropriate when the Court determines that " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to [summary] judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). "The moving party has the burden of demonstrating the absence of any genuine issue of material fact, but all inferences as to the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Thomson McKinnon Sec. Inc. v. Leasure (In re Thomson McKinnon Sec. Inc.)*, 132 B.R. 9, 11 (Bankr.S.D.N.Y.1991) (citing *Celotex* 477 U.S. 317, 106 S.Ct. 2548); *see also United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103*, 998 F.2d 129, 131 (2d Cir.1993).

The non-moving party may oppose a summary judgment motion by showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

"[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the non-moving party's case." *Gallo*, 22 F.3d at 1223–24. " '[T]he mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.' " *Ansam Assocs. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 447 (2d Cir.1985) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir.1980)). As Rule 56(e) of the Federal Rules of Civil Procedure specifically states, a "party may not rest upon the mere allegations or denials of [an] adverse party's pleading, but ... must set forth concrete particulars," and bring to the Court's attention some affirmative indication that their version of relevant events is not a meritless allegation. *See also SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978).

While the papers that have been filed with respect to this motion are voluminous, the parties' dispute boils down to one basic question: who has the burden to show that the chargebacks Chemical seeks to charge against the Retained Funds are valid or, stated differently, what is the proper procedure for exercising such chargebacks against a debtor in a bankruptcy case? [2] The question is answered by determining the nature of the chargebacks in relation to the bankruptcy process. Eastern asserts that Chemical is a secured creditor who has setoff or seeks to setoff its prepetition claim against the collateral that it holds. At varying times and with respect to particular arguments, Chemical agrees. For instance, as noted, Chemical's proof of claim unequivocally states that Chemical viewed itself as a se-

---

**2.** While the Trustee has moved for summary judgment on all three counts of his complaint, it is clear that his principal ground for this motion is the perceived fatal lack of documentation to support the claimed chargebacks. In fact, the Trustee's own Reply Memorandum states "[A]ll that is required of Chemical to obtain the benefit of setoff against the Deposit is the ability to prove that the chargebacks it seeks to deduct therefrom are valid." Trustee's Reply Memorandum at FN 6.

cured creditor who was retaining collateral in order to exercise a right of setoff. In addition, prior to Eastern's commencement of this action, Chemical sent notices to Eastern stating that the Deposit would be debited for specific chargebacks as they were determined. Finally, in its answer to this action, more than four years after the commencement of these bankruptcy cases, Chemical asserted an affirmative defense that it was entitled to exercise setoff rights against the Retained Funds.

In its response to this summary judgment motion, Chemical has taken positions which this Court has difficulty reconciling. For the first time, it raised a defense of recoupment in addition to the earlier setoff theory stating that it had "a right to setoff (as well as recoupment) under the Merchant Agreement" in its Memorandum in Opposition to Plaintiff's Motion For Partial Summary Judgment ("Chemical's Brief"). The distinctions between recoupment and setoff and the application of the two concepts to this case will be discussed. At this point, it is sufficient to note that recoupment and setoff are not interchangeable notions, and that one transaction cannot give rise to both setoff and recoupment rights.

Chemical's Brief also states that "although Chemical had the right to setoff, *it did not exercise that right* "[3] (emphasis supplied) and "Chemical made no post-petition setoffs."[4] These statements are an apparent response to the Trustee's position that any post-petition setoff would be a violation of the automatic stay which would justify denying an otherwise valid right of setoff. However, the same Chemical brief complains that "the Trustee seeks to challenge the validity of chargebacks that Chemical made to Eastern's account years ago, both before and after the Petition Date."[5] In this statement, Chemical appears to concede that post-petition chargebacks have already been completed.

The foregoing inconsistencies appear to emanate from Chemical's scramble to justify its actions in refusing to turn over the Re-

tained Funds to the Trustee for four years and unilaterally deciding its entitlement to the Funds while ignoring that those Funds were property of Eastern's bankruptcy estate. Regardless of whether the Retained Funds were subject to setoff rights or a security interest, they were and are property of Eastern's estate until and unless this Court, after an appropriate hearing on notice, orders that they should be released.

In a conspicuous attempt to confuse and complicate the record, Chemical has thrown a hodge-podge of allegedly pertinent facts and legal issues at the court claiming that such issues must be resolved before this adversary proceeding can be decided. In truth, the essential facts material to Eastern's claim for turnover based on Chemical's inability to fulfill its burden of proof are straight forward: (1) on the date of Eastern's bankruptcy petition the Deposit contained $1,311,802.52; (2) Eastern had an additional $104,000 in the Demand Deposit Account at Chemical; (3) Chemical has retained these funds since that time; (4) Chemical claims it is entitled to the Retained Funds either under the theory of setoff or recoupment because it has incurred $1,669,677.04 in post-petition chargebacks; (5) the validity of chargebacks can only be demonstrated through supporting documentation; and (6) Chemical only has supporting documentation pertaining to $496,961.20 in chargebacks. Chemical's opposition does not raise a genuine dispute as to any of these facts or a coherent legal argument on how Chemical can prevail at trial where no supporting documentation exists.

■ It is axiomatic that Chemical must prove that it has valid claims secured by the Retained Funds before it can recover the Funds. It is on this point that Eastern focuses its argument. While not explicitly admitted, Chemical appears to concede that it has not retained the backup documents to justify $1.173 million in chargebacks. Its own accountants conclude that:

3. Chemical's Brief at p. 33.

4. Chemical's Brief at p. 4.

5. Chemical's Brief at p. 2.

Due to the length of time since most of the Chargebacks were processed, and the absence of a complete set of supporting documentation, Policano & Manzo cannot render an opinion as to the manner in which Chemical performed its Chargeback obligations under the Merchant Agreement.

Bell Aff. para. 3.

This admission is consistent with the testimony of the Chemical and NDC witnesses. All the witnesses to whom the parties have cited testified that back-up documentation, apart from summary records, was required to evaluate and determine the validity of any alleged chargeback.[6] Most important, Chemical has not produced any evidence whatsoever to counter Eastern's assertion that it does not have any documentation to demonstrate the validity of $1.73 million of the claimed chargebacks. In fact, Chemical has not even offered an unsupported statement that such documentation or other proof exists. Thus, there is no need for a trial to review documentation supporting chargebacks as to $1.173 million in alleged chargebacks.

■ Chemical's justification for this failure to maintain adequate records is that Eastern did not fulfill its obligation under the Agreement to dispute alleged valid chargebacks within 10 business days of receipt of notice thereof. Whatever merit this argument may have outside of a bankruptcy case in a two party dispute, it has no merit here.[7] Through setoff, Chemical seeks to recover collateral that would otherwise belong to Eastern's estate. In order to accomplish such setoff, Chemical must move for relief from the automatic stay, prove the validity of its claim and its security interest, and otherwise satisfy section 362(d) of the Bankruptcy Code. In sum, the Bankruptcy Code, in seeking to protect creditor rights and encourage full disclosure, increases the burdens on a creditor such as Chemical in recovering collateral to cover chargebacks, and Chemical has failed to recognize and satisfy those burdens.

This Court has little compassion for Chemical's implicit position that it should not be prejudiced for its own failure to maintain evidence of the legitimacy of its chargebacks over the extended period of time between the

---

**6.** Testimony by Chemical's experts, affiants, and employees indicates that underlying back-up documentation is necessary to determine the validity of the chargebacks and characterizes Chemical's daily transaction journal and other summary records as only summaries of the status of Eastern's account. *See Dunn Dep.* at 82 ("[t]his daily transaction journal looks like ... an item-by-item listing of each chargeback ... passing through Chemical's Eastern Airlines settlement account ... to determine the validity of chargebacks, I believe you would need to look at the underlying documentation."); *Dorf Dep.* at 118 ("Q ... is there enough information on that document to enable anyone to determine whether the chargeback[s] listed on there are valid or not? A. No. This is just a document of the dollar amount of the chargeback as far as I could see."); *Oliva Dep.* at 10 ("Q. If you determined that based on the information you had at your disposal that the chargeback appeared valid, did you then send the chargeback along with the supporting documentation showing its validity to the merchant? A. That's right."); *Oliva Dep.* at 25, 26 ("Q. These chargebacks had to have certain backup documentation for it to be a valid chargeback, is that correct? A. Correct ... Q. And a chargeback dispute arising from a defective receipt was not valid without a copy of the receipt with the chargeback? A. Yes ... Q. So that when you sent the chargebacks to Eastern Airlines, you would send to Eastern ... assorted documentation that was necessary for the chargeback to be valid, correct? A. Right."); *Dorf Dep.* at 25 ("Q. So from the merchant's perspective every chargeback had to have certain documentation in order for it to be a valid charge? A. Correct."); *Dunn Dep.* at 125 ("Q. Do you of your own personal knowledge know whether the Eastern Airlines chargebacks processed by National Data Corp. were valid chargebacks?" Dunn, who worked with NDC's merchant business after it was purchased from Chemical, could not affirm that they were valid.); *Dunn Dep.* at 68 ("Q. In the vast majority of instances is it fair to say that you cannot determine the validity of the chargeback by looking solely at the daily NBI chargeback report? A. In general, that is true.")

**7.** *See, In re Standard Fin. Management Corp.,* 94 B.R. 231, 238 (Bankr.D.Mass.1988) ("Companies in bankruptcy especially need written objections to be able to review the basis of chargebacks. Chargebacks which are questionable may be borne by companies outside of bankruptcy as a cost of business, but they cannot automatically be allowed in bankruptcy because they deplete the estate from which honest creditors will receive a pro rata share and frustrate the equitable distribution of assets to all creditors which is the essence of the bankruptcy process.")

chargebacks and the institution of this action. If Chemical had moved for relief from the stay and justified its claims when it determined that it was necessary to offset its claims against the Retained Funds, as the Bankruptcy Code mandates, no such extended delay would have occurred. Instead, Chemical is now put in the awkward position of arguing that it never took setoffs that it would like to exercise now, even though it has already discarded the materials on which the claims justifying the setoff are based. From day one of this bankruptcy case, Chemical has had the means and the responsibility to bring this matter to a head. Therefore, the delay does not entitle Chemical to some lesser quantity of proof nor prejudice Eastern's bankruptcy estate in any other way.

■ No authority supports any of Chemical's positions with respect to setoff. The statute specifically states and this Court has repeatedly held that setoff is prohibited absent relief from the automatic stay. *See, Official Comm. of Unsecured Creditors of Operation Open City, Inc. v. New York State Dep't of State (In re Operation Open City, Inc.)*, 148 B.R. 184, 192 (Bankr.S.D.N.Y. 1992), *aff'd*, 170 B.R. 818 (S.D.N.Y.1994); *Shugrue v. Fischer (In re Ionosphere Clubs, Inc.)*, 164 B.R. 839, 843–44 (Bankr.S.D.N.Y. 1994). In *Operation Open City*, the New York Department of State (the "State") had setoff funds in its possession post-petition. In affirming this Court's decision in *Operation Open City*, the District Court noted that:

> The State contends that the debtor Operation Open City acquiesced in the retention of the funds and thus there was no violation of the automatic stay. This argument is unpersuasive because, in bankruptcy law, "even if a setoff is authorized by the parties, such setoff is expressly forbidden after a debtor files a bankruptcy petition."

*Operation Open City*, 170 B.R. at 825 (quoting *Blava In–Line, Inc. v. Midlantic Nat'l Bank N. (In re Blava In–Line, Inc.)*, 133 B.R. 33, 37 (Bankr.S.D.N.Y.1991); *see also Garver v. Bassford*, 753 F.2d 976, 977 (11th Cir.1985) (citing *Susquehanna Chem. Corp. v. Producers Bank & Trust Co.*, 174 F.2d 783, 787 (3d Cir.1949))). Apparently recognizing the fundamental frailties in its position of having already exercised valid post-petition setoffs without seeking relief from the automatic stay, Chemical raises the alternative defense of recoupment in its response to Eastern's summary judgment motion. Whether recoupment is prohibited by the automatic stay is a much closer call than whether setoff is prohibited. Since, theoretically, recoupment is the netting out of rights under one transaction as opposed to the setting off of claims under different transactions, arguably no claim against an estate is recovered through exercising recoupment rights. Consequently, the courts have split on whether exercising recoupment rights violates the automatic stay. *Compare Burley v. American Gas & Oil Investors (In re Heafitz*), 85 B.R. 274, 280 (Bankr.S.D.N.Y.1988) ("a party seeking to exercise a proper recoupment must first seek relief from the automatic stay, 11 U.S.C. § 362"); *In re Newport Offshore, Ltd.*, 88 B.R. 566, 569 (Bankr.D.R.I.1988) (creditor should have sought relief from the automatic stay prior to recouping); *Ohning v. Schneider Nat'l Transcontinental, Inc. (In re Ohning)*, 57 B.R. 714, 717 (Bankr.N.D.Ind.1986) (recoupment violated the automatic stay because "[a]ny act by a creditor . . . to collect a pre-petition debt . . . is a paradigm example of the activity specifically prohibited by the automatic stay." *with Holford v. Powers (In re Holford)*, 896 F.2d 176, 179 (5th Cir.1990)).

Since this Court views Chemical's actions in exercising or seeking to exercise chargebacks (foreshadowed by its filed proof of claim) against the Retained Funds as setoffs as opposed to recoupment, there is no need to reach the issue of whether exercising recoupment rights violates the automatic stay. Nevertheless, it should be noted that a few courts have stretched to find recoupment in utility security deposit situations in order to reach equitable results. *See Brooks Shoe Mfr. Co. v. United Tel. Co.* 39 B.R. 980 (E.D.Pa.1984); *In re Public Serv. Co.*, 107 B.R. 441 (Bankr.D.N.H.1989); *Blasbalg v. Narragansett Elec. Co. (In re Miner Indus.* ), 119 B.R. 6 (Bankr.D.R.I.1990); *(In re Norsal Indus.)*, 147 B.R. 85 (Bankr.E.D.N.Y. 1992). The analysis in these cases has not

been applied outside of the utility security deposit context and has been rejected in the latest utility security deposit case to address the issue. *In re Village Craftsman, Inc.*, 160 B.R. 740, 747 (Bankr.D.N.J.1993). In *Village Craftsman*, the court noted that

> such cases fail to discuss the fact that a security deposit which was posted prepetition by a debtor and which had not been applied to the debt when the petition was filed is cash collateral as defined by Code section 363(a). As such, a debtor in possession can use such deposit for other purposes under Code sections 363(c)(2) and 1107(a) by providing adequate protection for such deposit under Code sections 363(e) and 361. A debtor in possession can compel turnover of such deposit under Code section 542(a). The view that post-petition application of a security deposit is recoupment rather than setoff undermines the purposes of Code sections 363(a) and (c).

*Id.* at 747. This Court agrees with this analysis. So do the other courts which have addressed the chargeback process at issue here. In fact, in contrast to the divergent decisions with respect to deposits in the public utility context, the courts have repeatedly and consistently held that chargebacks from deposit accounts are setoffs that must be approved by the court. *See, Moratzka v. Visa USA (In re Calstar, Inc.)*, 159 B.R. 247 (Bankr.D.Minn.1993) (recovery of chargebacks from post-petition deposit is a violation of section 549 and the automatic stay); *Sherman v. First City Bank (In re United Sciences of Am., Inc.)*, 84 B.R. 79, 82 (Bankr. N.D.Tex.1988) ("To allow parties who dealt with a debtor-in-possession, pre-petition, to continue subjectively crediting or off-setting these credit card settlements post-petition would defeat the definition of property of the estate and the policy of the automatic stay."), *aff'd*, 99 B.R. 333 (N.D.Tex.1989), *aff'd*, 893 F.2d 720 (5th Cir.1990); *World Communications, Inc. v. Direct Mktg. Guar. Trust (In re*

*World Communications, Inc.)*, 72 B.R. 498, 501 (D.Utah 1987); *In re Standard Fin. Management Corp.*, 94 B.R. 231, 235 (Bankr. D.Mass.1988) ("As the Bank holds the funds subject to settlements, the Bank is bound by 11 U.S.C. § 362(a)(7) n. 1 and 11 U.S.C. § 553(a), and must seek Court approval to accomplish setoff.") [8]

■ The rationale behind these cases is simple. Allowing a creditor to foreclose on collateral without moving for relief from the automatic stay is repugnant to the bankruptcy system which stresses notice to parties in interest before assets are forever removed from the bankruptcy estate by a creditor. Certainly, it is not up to any creditor to unilaterally determine for itself whether recovery of particular assets from a bankruptcy estate is appropriate.

■ To the extent that Chemical seeks to exercise setoff rights at this point, it must (1) prove the validity of the setoff it seeks and (2) justify its failure to promptly turnover the Retained Funds or move for relief from the automatic stay to exercise setoff rights.

■ Chemical's position with respect to both of these points, while lengthy, is woefully lacking in substance. Since it does not have the back-up materials to prove its entitlement to setoff, Chemical asserts that it is Eastern's burden to disprove Chemical's setoff claims. Under the circumstances of this case, Chemical's emphasis on this point is enigmatic. Chemical assured Eastern that it had the documents to justify the chargebacks that it alleged, until Eastern discovered that no such documents exist. It was Chemical's duty to produce such evidence before any duty on the part of Eastern was required to dispute the chargebacks. A secured creditor must provide some evidence that it has a claim before the debtor must prove that it does not.

■ With respect to this point, Chemical claims that it is entitled to an adverse

---

8. Chemical's argument that the Retained Funds are not subject to turnover because the chargebacks are simply provisional credits such as those at issue in *Equitable Bank, N.A. v. Jobin (In re Twenty–Four Hour Nautilus Swim & Fitness Ctr., Inc.)*, 81 B.R. 71 (D.Colo.1987) is simply wrong. Chemical is clearly not attempting to reverse provisional credits; it seeks to recover funds that were provided as security. There is nothing provisional about the Retained Funds; they were deposited by Eastern.

inference because Eastern misplaced the documents it had compiled to dispute Chemical's chargebacks. In support of this argument, Chemical cites to a series of cases standing for the proposition that a person on notice that documents in their possession are relevant to potential litigation has a duty to preserve them. *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F.Supp. 1443, 1455 (C.D.Cal.1984) (citations omitted); *see also Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y.1991) (obligation to preserve evidence where a party is on notice that litigation is likely to be commenced). If a party loses or destroys evidence relevant to a case, an adverse inference is warranted because the loss effectively denies the opposing party an opportunity to dispute the allegations. *See generally Nation–Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218–19 (1st Cir.1982) (granting an adverse inference where party intentionally discarded relevant documents). However, when the missing or destroyed information is not in the exclusive control of one party, an adverse inference is not warranted because no one has been harmed. *See e.g., Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir.1985) (adverse inference not warranted when witness is equally available, or unavailable, to both parties); *Skeete v. McKinsey & Co.*, 1993 WL 256659, *7 (S.D.N.Y.1993) (granting monetary sanctions for negligent destruction of evidence, while finding adverse inference unwarranted because lost evidence still available to the opposing party).

The documents that Chemical needs to prove the validity of chargebacks were allegedly sent to Eastern by Chemical; there was no need to receive documents from Eastern to prove the chargebacks. Apparently, both Chemical and Eastern have lost the documentation that would justify chargebacks, and Eastern has lost some of the documentation that it intended to use to disprove some of the chargebacks that Chemical claimed. The missing documentation was either duplicative, or, to the extent it differed, would have been used to disprove the validity of the chargebacks. Essentially, Chemical seeks to disadvantage Eastern on the basis of the recent unavailability of documentation previously available to both sides. Under these circumstances, this Court cannot rationalize an inference in support of, or adverse to, either party. The parties are left to meet their burdens of proof. Eastern has adequately demonstrated that Chemical clearly cannot meet its burden of proof to justify $1.173 million in chargebacks it seeks; Chemical cannot prove its claim. Eastern's summary judgment motion is granted in the amount of $1.173 million.

■ The foregoing ruling with respect to Chemical's inability to prove the claimed chargebacks only resolves $1,173,000 of this approximately $1.8 million dispute. It is undisputed that Chemical has at least some documentation to prove $496,961.20 in chargebacks. Consequently, it is still necessary to address one other argument for summary judgment that Eastern has raised: the consequences of Chemical's violation of the automatic stay. Eastern argues that since Chemical has violated the automatic stay, this court should not allow any chargebacks whether or not Chemical is able to document their validity.

As previously mentioned, this Court and others have been forced to repeatedly remind parties that exercising setoff rights is a violation of the automatic stay. There should not be any confusion; section 362(a)(7) of the Bankruptcy Code is simple and means what it says: "the setoff of any debt owing to the debtor that arose before the commencement of the case under [title 11] against any claim against the debtor" is a violation of the automatic stay.

In this case, rather than moving for relief from the stay to accomplish what it insists are valid setoff rights, Chemical ignored its obligation during this long bankruptcy case. Instead, Chemical filed a lengthy and detailed proof of claim, noting not only the amount of its claim but its legal theory for recovery—setoff. Little more effort would have been necessary to prepare a relief from stay motion and serve the motion on creditors as the Bankruptcy Code and Rules mandate. Chemical is a sophisticated financial organization; it knew Eastern was in bankruptcy, but has made no attempt to justify its

failure to recognize the automatic stay or turnover obligations. As previously noted, Chemical's positions with respect to this action are transparent attempts to concoct legal justifications for its actions.

■ Cases have split on whether administrative freezes violate the stay. Cases that hold they do not include *Moreira v. Digital Employees Federal Credit Union (In re Moreira )*, 173 B.R. 965 (Bankr.D.Mass.1994), *In re Lough,* 163 B.R. 586 (Bankr.D.Idaho 1994), *National Bank of Cal. v. Air Atlanta, Inc. (In re Air Atlanta, Inc. )*, 74 B.R. 426 (Bankr.N.D.Ga.), *aff'd,* 81 B.R. 724 (N.D.Ga. 1987); *Rio v. Army Aviation Center Federal Credit Union,* 82 B.R. 138 (M.D.Ala.1986), *Hoffman v. Portland Bank (In re Hoffman )*, 51 B.R. 42 (Bankr.W.D.Ark.1985), and *Bank of American National Trust & Savings Ass'n v. Edgins (In re Edgins )*, 36 B.R. 480 (9th Cir. BAP 1984). Cases determining that an administrative freeze on the debtor's accounts to preserve a setoff right does violate the automatic stay include *Citizens Bank of Md. v. Strumpf (In re Strumpf )*, 37 F.3d 155 (4th Cir.1994), *Sousa v. Bank of Newport,* 170 B.R. 492 (D.R.I.1994), *In re Patterson,* 967 F.2d 505 (11th Cir.1992) and *In re Quality Interiors, Inc.,* 127 B.R. 391 (Bankr. N.D.Ohio 1991). Under the circumstances present here, Chemical's withholding of the Retained Funds was a violation of the automatic stay. The "freeze" has continued far too long without any effort by Chemical to follow the Bankruptcy Code process for resolution. It is the continuation of the freeze as much as its imposition that violates the automatic stay. *See, Crispell v. Landmark Bank (In re Crispell )*, 73 B.R. 375, 379 (E.D.Mo. 1987) ("While the mere imposition of an administrative freeze does not in itself violate the stay, the continuation of that freeze for any extended period of time would constitute a setoff in violation of Section 362(a)(7). This is because such a continuation would have the same substantive effect as if … setoff … had been consciously carried out. As a Court of equity this Court must look to substance rather than mere form.") Thus, whether Chemical has actually exercised setoff rights or simply withheld the Retained Funds has little relevance. The stay has been violated.

■ The analysis does not end here, however. This Court does not believe that forfeiture of otherwise valid setoff rights is mandated in every case by a party's fleeting or uncalculated violation of the automatic stay, particularly if the violation is addressed without the need for undue prompting by the debtor or others. In this case, however, Chemical's violation was neither short-lived nor born of ignorance. Nor was it remedied by Chemical fulfilling its obligation to move for relief from the automatic stay. Chemical's actions suggest that it did not agree with the turnover and setoff procedures established by the Code. It simply chose to ignore that process and devised one of its own. Under these circumstances, this Court will not allow a creditor to exercise setoff rights without penalty. *Bohack Corp. v. Borden, Inc.* 599 F.2d 1160, 1165 (2d Cir.1979) ("The statutory remedy of set off should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole.") *Collier on Bankruptcy,* ¶ 553.02 (15th ed. 1991) ("The right of setoff under section 553 is permissive, not mandatory. Its application, when properly invoked before a court, rests in the discretion of the court, exercised under general principles of equity.") *Operation Open City,* 148 B.R. at 193–94; *see also, Calstar,* 159 B.R. at 261 ("[T]he trustee is entitled, at a minimum, to recover damages equal to the amount of chargebacks that were made in violation of the automatic stay."). It is clear that some penalty is necessary to foster future compliance with the statutory scheme.

Under the Agreement, Chemical's contractual right to hold the Deposit expired on July 29, 1989. At that point, Chemical either had to show that it was entitled to recover the entire Deposit or return to Eastern what remained of the Deposit after all legitimate chargebacks had been deducted. Since it was Chemical's intention to recover the Retained Funds to satisfy its claim, Chemical should have moved for relief from the stay. Thus, having considered the circumstances here, having balanced Chemical's legitimate expectation that setoff rights will ordinarily

209

be recognized with the need to protect the integrity of the bankruptcy process against unilateral, covert creditor intrusion upon the bankruptcy estate, and being mindful that the Trustee delayed somewhat before asserting estate rights, this Court will allow Chemical to exercise setoff rights to the extent it can substantiate its claims, but reduce Chemical's recovery by the amount of the Trustee's expenses incurred in bringing and prosecuting this action to recover estate property.

### CONCLUSION

For the foregoing reasons, the Trustee's motion is granted in part and denied in part. The parties are instructed to submit an order consistent with this memorandum decision.