Humberto Silva ARAYA,
Plaintiff-Appellant,

v.

Clayburne A. McLELLAND, United
States Marshal,
Defendant-Appellee.

No. 75–1267.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1976.

Henry L. Newell, Balboa, Canal Zone, for defendant-appellant.

Lester Engler, U. S. Atty., Balboa, Canal Zone, Leonard Schaitman, Mark N. Mutterperl, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge:

The district court denied Araya's Petition for a Writ of Mandamus to compel the United States Marshal to attach a motor vessel without prepayment of attachment fees. We agree with the district court that the United States Marshal is under no statutory duty to attach the vessel without prepayment of attachment fees, and affirm.

Araya, a crewman aboard the M/V Gemini, instituted suit against the vessel and its owners for unpaid wages. A warrant of arrest was directed to the United States Marshal, directing him to attach the vessel and hold it in his custody. Relying upon 28 U.S.C.A. § 1921,[1]

---

1. 28 U.S.C.A. § 1921 provides in pertinent part:

Only the following fees of United States marshals shall be collected and taxed as costs, except as otherwise provided:

For the keeping of property attached (including boats, vessels, or other property attached or libeled) actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen' or keepers' fees, insurance, and $3 per hour for

the Marshal refused to attach the vessel unless Araya prepaid $1,000 to cover the Marshal's initial expenses. Araya then filed a Petition for Writ of Mandamus, claiming that 28 U.S.C.A. § 1916,[2] exempting seamen from prepayment of "fees and costs" in an action for, *inter alia,* wages, precluded the marshal from demanding prepayment of attachment costs as a condition to attachment. The district court found the approach of *Cohn v. George,* E.D.Ill.1968, 297 F.Supp. 527, persuasive, and denied the petition.

In resolving the apparent conflict between § 1916 and § 1921, the *Cohn* court reasoned that the expenses incurred in connection with the safekeeping of an attached vessel, such as compensation of a shipkeeper and expenses necessary for wharfage, maintenance and insurance, are not payable from public funds, nor can the marshal bind the United States by incurring such costs. 31 U.S.C.A. §§ 628, 665. If the expenses are not payable from public funds, then the marshal can meet these necessary obligations only by incurring those expenses personally, looking for repayment from the losing party at a later time. The court concluded that the statutory scheme should not be interpreted to require such a personal liability on the part of the marshal.

The only other decision considering the conflict between § 1916 and § 1921, and that upon which Araya relies, is *Thielebeule v. M/S Nordsee Pilot,* 2 Cir. 1971, 452 F.2d 1230. Construing the two statutes in *pari materia,* two considerations led the court to conclude that § 1916 must prevail. First, § 1921 was labeled a general provision relating to prepayment of fees and costs, while § 1916 was labeled a specific exemption. Since "the specific statutory provision must be considered to be controlling over a general one," § 1921 must yield. Second, the court found § 1916 to be part of the statutory policy of preference given to seamen's actions, particularly wage claims. This policy would be effectively thwarted if a seaman had to prepay attachment costs under § 1921. The court gave only brief explicit consideration to the aspect of the problem found determinative in *Cohn*—where does the money for attachment costs come from—by noting, without reference to any record facts, an administrative practice of having the marshal advance the required sums and then recoup them from the proceeds of the sale of the ship.

■ At the outset, we note that the statutory conflict raises no question as to the ultimate liability for costs of attachment, since § 1916 does not exempt the seaman from the payment of any judgment or decree which may be entered against him for costs. In those instances where the seaman has been unsuccessful in the prosecution of his suit, costs, including those of attachment, may be taxed against him. *Theodorakis v. Xilas,* 4 Cir. 1952, 200 F.2d 107, *cert. denied,* 345 U.S. 936, 73 S.Ct. 795, 97 L.Ed. 1363. The only question involved here is whether a seaman, in an action for wages, must prepay attachment costs as a condition of attachment by the marshal.

■ Our goal is to effectuate the will of Congress. Our starting point must be the words of the statutes, for we will resort to the legislative history and other aids of statutory construction only when the literal words of the stat-

each deputy marshal required for special services, such as guarding, inventorying, moving, and so forth. *The marshals shall collect, in advance, a deposit to cover the initial expenses for such services* and periodically thereafter such amounts as may be necessary to pay such expenses until the litigation is concluded;

. . . . .

(emphasis added)

2.  28 U.S.C.A. § 1916 provides:

    In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepayment fees or costs or furnishing security therefor.

utes create ambiguity or lead to an unreasonable interpretation. *United States v. Second National Bank,* 5 Cir. 1974, 502 F.2d 535. Araya agrees that we only need to look to the language of the statutes, for § 1921 refers to the attachment expenses as "fees" taxable as "costs," while § 1916 exempts seamen from prepayment of "fees" or "costs" in an action for wages. However, this interpretation runs afoul of the mandate which demands that, when possible, statutes should be construed so as not to be in conflict with each other. *Morton v. Mancari,* 1974, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290. We must look further.

Araya contends that, even if the statutes cannot be resolved facially, § 1916 must nevertheless prevail because it is a specific exemption to the general requirement of prepayment as mandated by § 1921. In our view, however, this approach seems arbitrary, for it is just as easy to denominate § 1916 as a general exemption of prepayment of costs and fees, contrasted to the specific requirement of prepayment of a particular expense, that of attachment costs. In fact, this rationale was adopted by the court in *Adamowski v. Bard,* 3 Cir. 1952, 193 F.2d 578, where the court concluded that § 1916, as a general provision, would not exempt the prepayment of costs for a stenographic transcript on appeal, as required by the specific provision of 28 U.S.C.A. § 753.

■ As a precept of statutory construction, we find more compelling the notion that, in resolving an irreconcilable conflict between successive statutory enactments, the later enactment should be given primary consideration. *International Union of Electrical, Radio & Machine Workers v. NLRB,* 1960, 110 U.S. App.D.C. 91, 289 F.2d 757. Here, § 1921 was amended in 1962 to require prepayment of attachment costs forty-six years after the seamen's exemption was created.[3] Although the legislative history of the 1962 amendment does not reveal a Congressional awareness of the conflict with § 1916, that history does indicate that Congress was aware of the dilemma which marshals faced when they held property under attachment or other process—an obligation to maintain property without funds to meet that obligation.[4] We find it highly unlikely that Congress, upon realization of the problem created by attachment *without* prepayment of costs, would have attempted to ameliorate the situation with respect to actions other than those involving seamen, and at the same time would have left untouched the problem as it pertains to seamen's actions for wages. In the very least, we feel that if this were the Congressional intent, specific mention of the seamen's exemption would have been made in either the statutory language or the legislative history.

In response to this position, the Second Circuit relied upon, and Araya would have us rely upon, an alleged administrative practice whereby the marshal advances funds for attachment, and is repaid at the conclusion of the litigation. We note that there is no showing of such a practice in the present record, nor are we aware of it. Further, we note that such a practice would be in direct viola-

---

3. § 1921 was amended by P.L. 87–621, 76 Stat. 417 (1962) to add the prepayment requirement. The § 1916 exemption first appeared as a condition to part of a judicial appropriation relating to court clerks. 39 Stat. 313 (1916).

4. H.R. Report 1724, Committee on the Judiciary, 87th Cong., 2d Sess. (1962) states at 7:

Existing law makes it necessary for the marshals to obtain an order of court to collect funds sufficient to pay current expenses in keeping and safeguarding property. In some instances, the court is unwilling to sign orders until suits are settled; meanwhile, *the marshals are in the position of being held responsible for safeguarding and keeping property without any funds to pay such expenses and Federal funds may not be used for such purposes.* Under our proposal, the interests of the marshals and private litigants will be fully protected and difficulties encountered in obtaining funds to pay expenses will be eliminated . . . . (emphasis added)

tion of instructions given to marshals in the United States Marshals Manual.[5] We refuse to base our decision on an administrative practice which has no support in the record and which obligates the marshal to act contrary to his express instructions.

Araya also suggests that, in the alternative, the marshal might persuade third parties to offer their services and receive in return only a lien upon the vessel, to be satisfied at the conclusion of the litigation. It is enough to say that there is no obligation on the part of third parties to offer their services without immediate compensation. We reject such reliance on the generosity of third parties.

Affirmed.

---

**5.** The United States Marshal's Manual, December 15, 1971 revision, § 525.04, of which we take judicial notice, state in pertinent part:

*Advance deposits for costs*—Pursuant to Title 28, Section 1921, United States Code, the marshal *shall* collect in advance sufficient fees to cover cost of service of the process, marshal's insurance and ten days keeper fees.

. . . Remember, in accordance with the law (31 U.S.C. 665) no employee, including the marshal, has the right to obligate government funds to defray costs or expenses incurred in seizures on behalf of private litigants. The private litigant must pay—and pay in advance.