**In re Edward C. LINDSEY, Debtor.**

**Edward C. LINDSEY, Plaintiff,**

v.

**SOLUTIONS EXCHANGE, INC., D.A. Crossman & Assoc., Inc., Atlanta Fleet & Leasing, Inc., Defendants.**

**Bankruptcy No. 93–71566.
Adv. No. 93–6896.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Feb. 16, 1995.

Edward Cameron Lindsey, pro se.

Barbara B. Stalzer, Trustee, Atlanta, GA.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is now in the post-judgment, post-appellate phase of litigation. The Court issued money judgments in plaintiff's favor on August 8, 1994 against three defendants. The judgment and an interlocutory order entered May 20, 1994 were appealed to the District Court and affirmed. The judgment was issued in plaintiff's favor as a result of the defendants D.A. Crossman & Associates, Inc. and Atlanta Fleet and Leasing, Inc.'s having willfully violated the automatic stay in bankruptcy under 11 U.S.C. § 362 by repossessing and disposing of plaintiff's leased automobile without seeking relief from the automatic stay. The judgment was entered against D.A. Crossman & Associates, Inc. for $20,000.00 in punitive damages, against Atlanta Fleet and Leasing, Inc. for $1,000.00 in punitive damages, and against both of these defendants jointly and severally for $2,292.44 in actual damages. Finally, judgment was entered against defendant Solutions Exchange, Inc. in the amount of $462.25. Plaintiff has proceeded pro se throughout the case.

This matter is before the Court on two related pleadings filed by plaintiff. On January 31, 1995, plaintiff filed a pleading entitled "Motion for Reconsideration" ("Motion for Reconsideration") seeking, among other things, reconsideration of the Court's Orders entered on January 24, 1995, August 8, 1994, and May 20, 1994. On February 1, 1995, plaintiff filed a second pleading entitled " 'Emergency' Motion in Support to Motion for Reconsideration" ("Emergency Motion") in which plaintiff made several new requests,

including a request for oral argument on the Motion for Reconsideration. The Emergency Motion also contained an attachment entitled "Affidavit to Support Motion for Reconsideration and 'Emergency' Motion in Support to Motion for Reconsideration" ("Affidavit"). The Court has reviewed the Motion for Reconsideration, the Emergency Motion, the Affidavit, and the response filed by defendants Solutions Exchange, Inc. and D.A. Crossman, Inc., which was completely unresponsive, and concludes that oral argument is unnecessary.

### A. Motion for Reconsideration of May 20, 1994 and August 8, 1994 Orders is Untimely.

■ Plaintiff's Motion for Reconsideration of the Orders entered August 8, 1994 and May 20, 1994, is untimely. LR 220–6, NDGa., made applicable to adversary proceedings by BLR 705–2, NDGa., requires that any motion for reconsideration be filed within ten (10) days after the entry of the order or judgment, and that parties shall not file motions to reconsider the Court's denial of a prior motion for reconsideration.[1] The Motion for Reconsideration filed on January 31, 1995 was filed long after the entry of the May 20 and August 8, 1994 Orders and is denied. Furthermore, plaintiff had previously filed a request to modify and reconsider the August 8, 1994 Order and Judgment, which was denied on August 24, 1994. Finally, both the May 20, 1994 Order and the August 8, 1994 Order were the subject of appeals, and both Orders were affirmed. (See Civil Action file No. 1:94–cv–2335–JTC and Civil Action file No. 1:94–cv–1677–ODE.)

### B. Request to Modify the Writs of Execution is Denied.

■ The only motion to reconsider that is before the Court on a timely basis is the motion to reconsider the Order of January 24, 1995. This Order was a ruling on plaintiff's motion entitled " 'Emergency Motion' for Enforcement of Order of Civil Contempt, Seizure of Person or Property and Sanction"

("Motion for Enforcement"), filed on January 11, 1995. The January 24, 1995 Order granted plaintiff's request for post-judgment interest and instructed plaintiff to obtain the writs of execution from the Clerk of the Bankruptcy Court. The other relief requested was denied.

The gravamen of the Motion for Reconsideration appears to be plaintiff's contention that one or more of the writs of execution are incorrect, as they do not include an amount of $7,000.00 originally referred to in the Order of May 20, 1994. The Court has reviewed the writs of execution, and the dollar amounts are correct. The May 20, 1994 Order stated that the evidentiary record was not clear on an amount sufficient to enable the plaintiff to make a down payment to enter into a new lease of a similar vehicle. The Order gave the parties five (5) days to file a pleading setting forth each party's contention as to this component of damages and provided "If no pleadings are filed, the Court will set the amount at $7,000.00. If pleadings are filed regarding this component of the damage claim, the Court will schedule a hearing to consider evidence as to this point." Within five (5) days, defendants filed a pleading addressing this issue entitled "Motion for Brief for Determination of Costs to Lease Per Order of Court". The Court set a hearing for August 4, 1994, on this issue. At that hearing, the Court provided the parties with oral findings of fact and conclusions of law on the record pursuant to Fed.R.Bankr.P. 7052, incorporating Fed.R.Civ.P. 52. The portion of the oral ruling relevant to this issue is as follows:

THE COURT: The hearing today was, as I stated at the outset, was for the limited purpose of reopening the record on the isolated issues mentioned in the June 21st order. At the conclusion of the trial in May, I awarded actual damages in several amounts that have not been challenged here, and those remain; and that's the two thousand two hundred and thirty-three dollars and twenty-two cents ($2,233.22), the fourteen dollars and seventy-one cents

---

1. Plaintiff's motion to reconsider states that it is filed under Fed.R.Bankr.P. 3008. This rule has nothing whatsoever to do with this adversary proceeding. Rule 3008 deals with orders allowing or disallowing proofs of claim against the estate.

($14.71), and the forty-four dollars and fifty-one cents ($44.51).

At that time, the evidentiary record wasn't clear on what amount was sufficient to enable the Plaintiff to make a downpayment to enter into a new lease of a similar vehicle, and I left the record open to allow the parties to file pleadings on those contentions. The Defendants filed such a pleading, and I had a hearing on the motion for reconsideration June 21, 1994.

At that time, I advised the parties, and the people present now, that I would rehear the issue of actual damages as to this component on today, August 4, 1994. The Defendants initially indicated they wanted the opportunity to offer the Plaintiff a similar lease on a similar vehicle, but at the outset of his hearing both counsel for D.A. Crossman and Atlanta Fleet and Leasing announced that they would not be in a position to make such an offer.

The Plaintiff testified, and contended that the damages necessary to allow him to enter into a new lease of a similar vehicle was in the range of thirty-four to thirty-six thousand dollars ($34,000.00 to $36,000.00). I've examined the evidence presented, including Exhibits 1 and 2, while not admitted, I felt I had to look at them to see what you all were talking about, to see if they were hearsay. And I conclude, unequivocally, that they would be, and are hearsay, and would not be competent to support an actual damage award in the amount requested.

The Plaintiff appeared pro se, but I can't ignore the rules of evidence. It would be error to award an actual damage award in the range of thirty-four, thirty-five, or thirty-six thousand dollars ($34,000.00, $35,000.00, or $36,000.00) based on what has been presented.

The Plaintiff has the burden of proving actual damages. I can't just come up with an amount. The Plaintiff has stated he leaves it in my hands, but I don't have the power or the authority to simply pick a number out of the air. I am not knowledgeable on my own, without evidence of what the terms are out there to lease a Lexus, and I certainly can't bring any expertise in that regard to this proceeding. There has been nothing offered that would be competent to support a particular dollar award.

I'm certain there is a number out there, and there is a way to present that evidence that would have been appropriate, but I can't do the work for the parties. *So, I will not enter any actual damage award over and above the two thousand two hundred and thirty-three dollars and twenty-two cents ($2,233.22), and the other two smaller amounts that I previously awarded.*

Transcript of August 4, 1994 Hearing, p. 46, l. 15, through p. 48, l. 20 (emphasis added).

Following the August 4, 1994 hearing, the Court entered an Order and final Judgment on August 8, 1994 which did not include actual damages of $7,000.00. As previously stated, the August 8, 1994 Order and Judgment was appealed and affirmed. Accordingly, the dollar amounts in the writs of execution are correct.

## C. Request for Waiver of Marshal's Fees Due to Indigent Status.

Plaintiff's Motion for Reconsideration of the Order of January 24, 1995 and Emergency Motion also contain a number of other requests for relief, many of which are not the subject of the original Motion for Enforcement filed on January 11, 1995 or the January 24, 1995 Order. Each will be discussed in turn.

Plaintiff requests an "order of the court instructing the United States Marshals Service, the defendants, and not limited to the United States to pay possible fees to the appropriate agency to serve a '*corrected*' writ of execution" (¶ (D) of the Emergency Motion). As discussed above, the writs of execution issued by the Clerk pursuant to the Court's Order dated January 24, 1995, contain the correct dollar amounts. The Court construes this request as a plea for the Court to direct service of the previously prepared writs of execution without prepayment of fees and expenses routinely charged by the United States Marshals Service.

■ Although plaintiff does not reference 28 U.S.C. § 1915, the *in forma pauperis* statute, the Emergency Motion's requested relief and attached Affidavit are sufficient to demonstrate that plaintiff does not have the means to pay the marshal's fees for serving the writs of execution, and plaintiff is thus entitled to proceed *in forma pauperis.* However, the issue remains as to whether an indigent can be excused from paying the United States marshal's fees and expenses incident to executing civil process on a writ of execution.[2]

Section 1921 of Title 28 covers the fees of the United States marshals which may be collected and taxed as costs. The statute provides, in pertinent part, as follows:

(a)(1) The United States marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for the following:

(A) Serving a writ of possession, partition, execution, attachment in rem, or libel in admiralty, warrant, attachment, summons, complaints, or any other writ, order or process in any case or proceeding.

(B) Serving a subpoena or summons for a witness or appraiser.

(C) Forwarding any writ, order, or process to another judicial district for service.

(D) The preparation of any notice of sale, proclamation in admiralty, or other public notice or bill of sale.

(E) The keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required for special services, such as guarding, inventorying, and moving.

(F) Copies of writs or other papers furnished at the request of any party.

(G) Necessary travel in serving or endeavoring to serve any process, writ, or order, except in the District of Columbia, with mileage to be computed from the place where service is returnable to the place of service or endeavor.

(H) Overtime expenses incurred by deputy marshals in the course of serving or executing civil process.

(2) The marshals *shall* collect, in advance, a deposit to cover the initial expenses for special services required under paragraph (1)(E), and periodically thereafter such amounts as may be necessary to pay such expenses until the litigation is concluded. *This paragraph applies to all private litigants,* including seamen proceeding pursuant to section 1916 of this title.

28 U.S.C. § 1921(a)(1) and (2) (1994) (emphasis added).

The provisions of § 1921 allow for basically three categories of charges: fees, expenses, and commissions. Fees are those amounts charged by the marshal for the mailing or delivery in person of writs or other items. The current charge for service or service attempted in person per item is $40.00 per deputy if served within two hours and an additional $20.00 for each additional duty hour or portion thereof per deputy. After published duty hours, the charge is $50.00 if served within two hours and an additional $25.00 for each additional hour per deputy. 28 C.F.R. § 0.114 (1991). Expenses are out-of-pocket expenses which, in a given case, may include parking, tolls, storage of assets, advertising, appraisal, insurance and the like. Commissions are the percentage amounts the marshal is entitled to receive from monies realized after seizing and disposing of prop-

2. The Court recognizes that there is an issue as to whether bankruptcy courts have the authority to rule on *in forma pauperis* motions. Judge Mahoney recently addressed this issue in *Huff v. Brooks,* 175 B.R. 409 (Bankr.S.D.Ala.1994) and concluded that bankruptcy courts, as "units of the district court" have authority to deal with *in forma pauperis* motions. *Id.* at 412. The Court finds the reasoning in *Huff v. Brooks* to be persuasive. If, however, the district court should find that this Court does not have the authority to enter *in forma pauperis* orders in bankruptcy matters, this portion of the opinion constitutes proposed findings of facts and conclusions of law submitted to the district court pursuant to Fed. R.Bankr.P. 9033 for its review and use in entry of a final order.

erty and after receiving and paying over monies. The amount of the commission is governed by 28 U.S.C. § 1921(c). Plaintiff's request only goes to the first two categories of charges.

The *in forma pauperis* statute does not refer specifically to 28 U.S.C. § 1921 or to marshal's fees in serving and effecting a writ of execution. The relevant portions of § 1915 are subsections (a) and (c), which provide as follows:

(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

.      .      .      .      .

(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

28 U.S.C. § 1915(a) and (c) (1994).

■ The hourly fees charged by the marshal for delivering the writ in person appear to be within the scope of fees that can be excused for an indigent such as plaintiff under § 1915(c). Subsection (c) is worded very generally and is not limited to service of process in the commencement of litigation. The fact that § 1921(a)(1)(A) does not expressly except litigants proceeding *in forma pauperis* does not mean that the indigent should not be relieved of the obligation. *City of Ashland v. Cooper*, 863 F.2d 691, 693 (9th Cir.1988) and *Pasquarella v. Santos*, 416 F.2d 436, 437–38 (1st Cir.1969) (both holding that indigents were not required to post removal bonds, notwithstanding the requirement that then existed in 28 U.S.C. § 1446(d)). Here, plaintiff obtained a judg-

ment as a result of defendants' intentional violation of the automatic stay in bankruptcy. Plaintiff has no money to pay these hourly fees to deliver the writs of execution, and it is appropriate that the hourly fees be waived in this case.

The more troublesome issue is what to do about the marshal's expenses of levy and sale incident to effecting the writs of execution, should plaintiff comply with the marshal's procedures in identifying property upon which levy is sought. While the language of 28 U.S.C. § 1915 is general, many fees and expenses have been held not to constitute "fees" or "costs" within the meaning of § 1915(a) and its predecessors. E.E. Woods, Annotation, *What Costs or Fees are Contemplated by Statute Authorizing Proceeding In Forma Pauperis*, 98 A.L.R.2d 292 (1964 and Supp.1993); Romualdo P. Eclavea, Annotation, *What Constitute "Fees" or "Costs" Within Meaning of Federal Statutory Provision (Under 28 U.S.C. § 1915(a) and Similar Predecessor Statutes) Permitting Party to Proceed In Forma Pauperis Without Prepayment of Fees and Costs or Security Therefor*, 20 A.L.R. Fed. 274 (1974 and Supp. 1994).

■ The Court has been unable to find any reported cases specifically addressing whether marshal's fees and expenses in aid of execution may be ordered waived or paid for by the government when the party holding a federal money judgment is a pauper. However, the text of § 1921(a)(2) persuades the Court that the United States Marshals Service cannot be ordered to waive or incur out-of-pocket expenses in serving and collecting on a writ of execution, even in the case of an indigent.

■ The plain language of 28 U.S.C. § 1921(a)(2) requires marshals to collect deposits from all private litigants to cover expenses described in § 1921(a)(1)(E). *In forma pauperis* litigants are private litigants. The expenses referred to include actual expenses incurred, such as the cost of keeping or storing property, moving property, insurance, and an hourly rate, including overtime, for special services such as guarding, inventorying, and moving the attached property.

The plain meaning of a statute is conclusive, except in rare cases where the literal application of the statute would produce a result demonstrably at odds with the intention of the drafters. *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008, 1010 (11th Cir.1994) (citations omitted). Where a statute is unambiguous, the court does not have to look beyond its text. *City of Jamestown, Tennessee v. James Cable Partners, L.P. (In re James Cable Partners, L.P.),* 27 F.3d 534, 536, *reh'g denied,* 38 F.3d 575 (11th Cir.1994) (citations omitted).

■ In addition, while the Court does not see an actual conflict between § 1915 and § 1921, a precisely drawn statute dealing with a specific subject controls over a statute governing a more generalized spectrum. *United States v. Louwsma,* 970 F.2d 797, 799, (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1383, 122 L.Ed.2d 759 (1993) (citations omitted); *National Bank of Georgia, Inc. v. Air Atlanta, Inc. (In re Air Atlanta, Inc.),* 74 B.R. 426, 427 (Bankr. N.D.Ga.1987), *aff'd,* 81 B.R. 724 (N.D.Ga. 1987). The statute was amended in 1988 to add the following sentence:

> This paragraph applies to all private litigants, including seamen proceeding pursuant to Section 1916 of this title.

The specific, mandatory language of 28 U.S.C. § 1921(a)(2) controls over the more general, permissive language of 28 U.S.C. § 1915(a) and (c).

The case law relating to payment of marshal's expenses by seamen proceeding under 28 U.S.C. § 1916 is helpful by analogy. Prior to the 1988 amendment to 28 U.S.C. § 1921(a)(2), making it clear that marshals must collect deposits to cover initial expenses from all private litigants including seamen, there was a split of authority as to whether seamen could compel a United States marshal to attach vessels without the prepayment of fees. These cases are instructive, because seamen, like paupers, are the subject of a special statute in Chapter 123 of Title 28 of the United States Code. Section 1916 of Title 28 provides that: "In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor." 28 U.S.C. § 1916 (1994). Historically, courts have noted the similarities in both the language of 28 U.S.C. §§ 1915 and 1916 and the public policy justifications behind the two statutes. *See United States v. Barbeau,* 92 F.Supp. 449 (D.Alaska 1950) (territory of Alaska could entertain *in forma pauperis* motions because they were similar to the motions it had been entertaining under 28 U.S.C. § 1916); *The Astra,* 34 F.Supp. 152 (D.Md.1940) (seaman suing for wages should be treated on the same footing as those suing *in forma pauperis); Memphian,* 245 F. 484 (D.Mass.1917) (the similarity in the seaman and *in forma pauperis* provisions is evident from the explicit language found in the two statutes); and *The Georgeanna (Berhaus v. The Georgeanna),* 31 F. 405 (S.D.N.Y.1887) (the exception in favor of seamen is in consideration of their necessitous condition and their presumptive inability to give the ordinary security required in admiralty causes, which is in conformity with common law actions permitting suits *in forma pauperis).*

In *Araya v. McLelland,* 525 F.2d 1194 (5th Cir.1976), the Fifth Circuit held that a United States marshal was under no statutory duty to attach a vessel without prepayment of the attachment fees by a seaman proceeding under § 1916. The Fifth Circuit specifically followed *Cohn v. George,* 297 F.Supp. 527 (E.D.Ill.1968) where the district court reasoned that these out-of-pocket expenses are not payable from public funds, and a marshal is not permitted to make expenditures from public funds for the purpose of assisting a seaman in pursuing his claim. Discussing the apparent conflict between §§ 1916 and 1921, the *Araya* court stated that in resolving a conflict between successive statutory enactments, the later enactment should be given primary consideration. Section 1921(a) was amended in 1962 to require prepayment of attachment costs forty-six years after the seamen's exemption was created. The Fifth Circuit acknowledged and disagreed with a contrary holding by the Second Circuit in *Thielebeule v. M/S Nordsee Pilot,* 452 F.2d 1230 (2nd Cir.1971) where the

---

court held that the exemption for seamen in § 1916 prevented the marshal from requiring any prepayment or security for the expenses involved in attaching and keeping the vessel. Courts considering the conflict between the Second Circuit and the Fifth Circuit followed the Fifth Circuit *Araya* decision. *Puerto Rico Drydock and Marine Terminals, Inc. v. the Motor Vessel Luisa del Caribe,* 746 F.2d 93 (1st Cir.1984); *Setera III v. F/V Olympic,* 491 F.Supp. 844 (W.D.Wash.1980). *See also, Shultz v. M/V Elinor,* 819 F.Supp. 1068 (S.D.Fla.1993).

The reasoning in *Araya* is persuasive here. First, the marshal has no statutory duty to levy and sell property of a judgment debtor for an indigent judgment creditor without prepayment of expenses. These expenses are not payable from public funds. Second, following the analysis in *Araya,* if there is a conflict between § 1915 and § 1921(a)(2), the later enactment should be given primary consideration. Section 1921(a) was amended in 1962 to require a deposit for expenses and was amended again in 1988 to state that this requirement applies to *all* private litigants. The original federal *in forma pauperis* statute was enacted in 1892 and subsections (a) and (c) of § 1915 have not been amended since 1959. Finally, *Araya* is a Fifth Circuit case, and all Fifth Circuit decisions prior to October 1, 1981 are considered binding precedent in the Eleventh Circuit.[3]

Thus, the Court concludes that it must deny plaintiff's request that the United States marshal or the government pay the expenses in aid of execution. If plaintiff pays any expenses, he is entitled to have them taxed as costs against the defendants.

### D. Other Relief.

Plaintiff argues that he has claims under other federal statutes: 42 U.S.C. § 1981(a), 28 U.S.C. § 1361, and 18 U.S.C. § 845(a) (¶)(C) and (G) of the Motion for Reconsideration). The relief, if any, requested under these statutes is vague and unintelligible, and relief under these statutes cannot be entertained here. The complaint in this adversary proceeding has been tried and a final judgment has been entered. Furthermore, the Bankruptcy Court is a court of limited jurisdiction, and this Court has no jurisdiction to hear any of the claims asserted under the federal statutes cited by plaintiff.

Plaintiff also requests the incarceration of defendants' principals and counsel (¶ (G) of the Emergency Motion). Plaintiff is frustrated with the difficulty he is apparently having in collecting the judgment. Plaintiff requests the Court refer defendants' principals and counsel to the District Court for imprisonment for failing to pay the judgment entered in this adversary proceeding. There is no current legal authority for imprisoning persons for failure to pay debts or judgments. Plaintiff cites 28 U.S.C. § 2007(a), which states:

> (a) a person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished. All modifications, conditions, and restrictions upon such imprisonment provided by State law shall apply to any writ of execution or process issued from a court of the United States in accordance with the procedure applicable in such State.

28 U.S.C. § 2007(a) (1994).

The State of Georgia abolished imprisonment for debt in 1868, and, therefore, 28 U.S.C. § 2007 explicitly prohibits such imprisonment. *See,* Ga. Const. Art. I, § 1, ¶ 23 and *State of Georgia v. Higgins,* 254 Ga. 88, 326 S.E.2d 728 (1985) (discussing the provisions in the Georgia Constitutions regarding imprisonment for debt from 1798 forward).

Plaintiff alternatively requests that the Court find defendants' principals and counsel in contempt and incarcerate them "for refusal to obey the order of the court". Plaintiff cites *Cutting v. Van Fleet,* 252 F. 100 (9th Cir.1918) in support of his request. In *Cutting,* the Ninth Circuit held that the defendant was properly imprisoned after the lower court found him in contempt of an order directing him to pay court-appointed

3. *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir. 1981).

master's fees incurred pursuant to a court-ordered accounting of defendant's corporation. *Id.* at 100. The court distinguished the contempt sanction from imprisonment from debt, prohibited in California, stating that, "the order here made is not for the benefit of a party to the suit, and is not of the character of a judgment or decree for the payment of money, or of a debt found due to the master. The proceeding is in contempt for refusal to obey an order of the court." *Id.* at 102. Plaintiff's request falls outside the scope of the *Cutting* contempt proceeding because plaintiff is a party to the suit and is trying to enforce a judgment for the payment of money. Moreover, the Eleventh Circuit has explicitly stated, "that when a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt." *Combs v. Ryan's Coal Company, Inc.*, 785 F.2d 970, 980, *reh'g denied*, 791 F.2d 169 (11th Cir. 1986), *cert. denied*, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986) (citations omitted). Accordingly, plaintiff's request for an Order directing the incarceration of defendants' principals and counsel is denied.

■ Next, plaintiff seeks an extension of time to file an appeal of the Court's previous Orders (¶ F of the Motion for Reconsideration). Plaintiff asks that the time be extended for twenty (20) days from the date of the ruling on the Motion for Reconsideration. The time for appealing the Orders of August 5, 1994, and May 20, 1994 has long passed, and the Court has no authority under Fed. R.Bankr.P. 8002(c) to extend the time for appealing those Orders. Furthermore, as stated above, both of these Orders have already been appealed. Plaintiff timely requested the extension of time for appealing the Order of January 23, 1995, but the filing of the Motion for Reconsideration has tolled the time for appealing that Order. Accordingly, the time for appealing the January 23, 1995 Order is ten (10) days from the date of the entry of this Order. Fed.R.Bankr.P. 8002(b). This Court will not grant any further extensions.

■ Finally, plaintiff filed a request for oral argument on the Motion for Reconsideration. The request is denied. The request for oral argument cites Fed.R.Bankr.P. Rules 8011(d), 8008(c), and 3008. None of

these rules apply to this proceeding at this time. Rules 8008 and 8011 relate to appeals, and this Court is not an appellate court. Rule 3008 relates to reconsideration of denials of claims *against* the estate. The Bankruptcy Court has already issued a judgment, and the Clerk has issued writs of execution in plaintiff's favor. Whatever additional claims plaintiff may wish to assert cannot be brought in this forum. Plaintiff can appeal this Order or take appropriate actions to collect the judgment, but plaintiff is not entitled to any further hearings in the Bankruptcy Court on this matter.

In accordance with the above reasoning, the relief requested in plaintiff's Motion for Reconsideration and Emergency Motion is DENIED with the one exception that the Court directs that the hourly fees charged by the United States marshal for delivering the writs of execution be waived due to the plaintiff's indigent status. Plaintiff is responsible for any expenses charged by the marshal. If plaintiff pays any expenses, he is entitled to have them taxed as costs against the defendants.

IT IS SO ORDERED.